THE STATE ex rel. UEL W. LAMKIN, Superintendent of Public Schools, v. GEORGE E. HACKMANN, State Auditor.

In Banc, June 13, 1918.

SUPERINTENDENT OF SCHOOLS: Traveling Expenses: Outside of State. Since the Legislature appropriated money to pay the traveling expenses of the office of State Superintendent of Public Schools, and the statute prescribing his duties says he shall have power "to in every way elevate the standard and efficiency of the instruction given in the public schools of the State" and further says that "all moneys reasonably expended in the execution of these duties shall, upon due proof," be allowed and paid by the State, the question of the necessity and expediency of incurring expense for this purpose, in the absence of statutory restriction, is to be determined by the Superintendent, and not by the State Auditor; and in consequence a reasonable expense account incurred by the Superintendent in railroad fares and hotel accommodations in attending an annual meeting, at Portland, Oregon, of the National Education Association, composed of superintendents of public schools in all the States and of leading teachers and educators throughout the county and organized to promote, foster and encourage the cause of public education generally, should, upon the Superintendent's approval, be audited by the State Auditor for payment out of the moneys so appropriated, as an expense useful and properly to be incurred in the performance of the Superintendent's statutory duty "to elevate the standard and efficiency of the instruction given in the public schools of the State."

Held, by WALKER, J., dissenting, that the statutes contain no intimation of a requirement that the State Superintendent shall attend educational associations, and without a statute declaring, either in express terms or by reasonable implication, it to be his duty to attend national educational associations, the Legislature itself could not appropriate money to pay his traveling expenses in attending them.

## Mandamus.

W.RIT GRANTED.

*A. T. Dumm* for relator.

(1) Mandamus is the proper remedy. State ex rel. v. Gordon, 236 Mo. 142; State ex rel. v. Wilder, 199 Mo. 470; State ex rel. v. Wilder, 196 Mo. 429; State ex rel. v. Meier, 143 Mo. 447; Mansfield v. Fuller, 50 Mo. 339; 26 Cyc. 235, 236; 19 Am. & Eng. Ency. Law (2 Ed.), 782-785; High, Extra. Rem. (3 Ed.), sec. 104; Merrill on Mandamus, sec. 126. (2) And the return in the nature of a demurrer to the petition for the writ (which, under the stipulation, stands as and for the alternative writ itself) admits the facts pleaded in the petition. State ex rel. v. Reynolds, 256 Mo. 714; State ex rel. v. Gordon, 231 Mo. 559; State ex rel. v. Cook, 171 Mo. 354; High, Extra. Rem. (3 Ed.), sec. 449. (3) Mandamus being the proper remedy, and the facts alleged in the petition being admitted, the only question remaining for the court to decide is as to the law applicable to the admitted facts, and the law being clearly in relator's favor, the peremptory writ of mandamus should be awarded. Sec. 10922, R. S. 1909; Laws 1917, p. 10; sec. 22; Secs. 10920, 11813, R. S. 1909; High, Extra. Rem. (3 Ed.), sec. 449.

*Frank W. McAllister,* Attorney-General, *Thomas J. Cole* and *John T. Gose,* Assistant Attorneys-General, for respondent.

(1) A demurrer only admits those facts which are well pleaded. Paving Co. v. Fleming, 251 Mo. 222; Meek v. Hurst, 223 Mo. 696; Donovan v. Boeck, 217 Mo. 70. (2) Relator's right must be clear. "It is a principle of the law of mandamus that the relator must have a clear right to the performance of the act sought to be coerced by the mandate of the court." State

ex rel. v. Thomas, 245 Mo. 71. "In order for the writ of mandamus to be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of the respondents to perform the act required." 19 Am. & Eng. Ency. Law (2 Ed.), 725; State ex rel. Doud v. Lesueur, 136 Mo. 452; State ex rel. v. Appling, 191 Mo. App. 592; High on Extraordinary Remedies, sec. 12, p. 17.

FARIS, J.—This is an original proceeding by mandamus to compel the respondent, who is the State Auditor, to audit for payment two expense-accounts for traveling expenses incurred by the petitioner, who is the State Superintendent of Public Schools.

The issuance of an alternative writ was waived by the respondent and it was agreed that the petition for the writ should stand for all purposes as and for the alternative writ.

The pleadings state the case. The first count, omitting formal parts, and parts already substantially stated, runs thus:

"Your petitioner says that, in the month of July, 1917, in connection with and in the discharge of the duties of his office as Superintendent of Public Schools of Missouri, as aforesaid, he attended the annual meeting of the National Education Association at the City of Portland, State of Oregon; that petitioner is, and, at the time hereinabove mentioned was, a member of said National Education Association; that said National Education Association is constituted and composed of the superintendents of the public schools of the various States of the Union, and of leading teachers and educators throughout the United States; and that the purpose of the organization of said National Education Association, and of the annual meetings of the same held in different cities of the country, is to promote, foster and encourage the cause of public education, and to elevate the standard and efficiency of the instruction given in the various States of the

Union, and throughout the United States generally; and that the attendance of your petitioner at said annual meeting of said National Education Association, in the City of Portland, Oregon, in said month of July, 1917, was by him believed to be, and your petitioner alleges that it was, useful and necessary to the proper and efficient discharge of the duties of his said office, and tended to promote and advance the cause of public education in Missouri, and to elevate the standard and efficiency of the instruction given in the public schools of this State; and that his attendance at said meeting was authorized by the laws of this State prescribing his powers and duties, and more particularly by the provisions of Section 10922, Revised Statutes 1909.

"Your petitioner says that, in attending said annual meeting of said National Education Association, at the time and place aforesaid, he actually expended the sum of $140.65, and that said amount was the reasonable and actual expense of his said attendance at said meeting, including necessary railroad fare, hotel bills, and other expenses reasonably and actually necessary to his attendance at said meeting; and that no personal expenses were or are included in said above-mentioned sum.

"Your petitioner says that thereafter, and on the 5th day of September, 1917, he presented to the said George E. Hackmann, State Auditor as aforesaid, his account in said sum of $140.65 (which said account had theretofore been duly approved by petitioner as Superintendent of Public Schools of Missouri) for allowance as a claim against the State of Missouri, as authorized and provided by said Section 10922, Revised Statutes 1909, and to be paid out of the moneys appropriated for the contingent and traveling expenses of the department of education, said moneys being appropriated by Act approved April 11, 1917, entitled 'An Act to appropriate money for the support of the state government, the payment of the contingent and the incidental expenses of the state departments,' etc.,

and being Section 22, page 10, of Laws of Missouri 1917; that at the time your petitioner presented said account to the said George E. Hackmann, State Auditor as aforesaid, for allowance, there was, and is now in the State Treasury, to the credit of the traveling expense account of the moneys appropriated for the contingent and traveling expenses of the department of education, more than sufficient money to pay said account of $140.65; and that it then and thereupon became the duty of the said George E. Hackmann, State Auditor as aforesaid, to audit and allow said account in said sum of $140.65; but your petitioner says that the said George E. Hackmann, State Auditor as aforesaid, wrongfully failed and refused, and does still wrongfully fail and refuse, to audit and allow said account in said sum of $140.65, or in any other sum, for the reason, as your petitioner is informed and believes, that it is the opinion and decision of the said George E. Hackmann, State Auditor as aforesaid, that your petitioner is not entitled to have audited and allowed, as a claim against the State of Missouri, any expenses made or incurred by him outside the State of Missouri.

"Your petitioner says that he is remediless in the premises by or through ordinary process or proceedings at law, and he therefore prays this Honorable Court to issue its writ of mandamus directing and commanding the said George E. Hackmann, as the State Auditor of Missouri, to audit and allow your petitioner's said claim in said sum of $140.65, and for such other relief as to the court may seem meet and proper in the premises."

The second count is a substantial rescript of the first count, except that it is bottomed upon expenses incurred in a trip to Washington, D. C., the nature of which is thus set forth:

"First: To consult with the Federal Board for Vocational Education regarding the terms under which Federal money should be made available for the State of Missouri for the purposes of reimburse-

ments to school districts for moneys expended for the salaries of teachers of trade, industrial, home economics subjects, and teachers of agriculture, and for the training of such teachers. Your petitioner says that said Federal Board is created by act of Congress, and is appointed by the President to administer the Smith-Hughes Act, under which moneys are annually granted to the various States for the above purposes; that said Federal Board notified both your petitioner and the Governor of Missouri that the State of Missouri should be represented at said meeting; that the law of Missouri (Sec. 3, page 513, Laws 1917) vests the disbursements of moneys received by the State for the above purposes in the State Board of Education, and that your petitioner, as Superintendent of Public Schools, as aforesaid, is ex-officio chairman of said State Board of Education, and is designated by Section 11, page 516, Laws of Missouri 1917, as the executive officer of said board for the administration of said act.

"Second: To attend, at the same time and place, a conference of State Superintendents of seven States, Missouri being one of them, said conference being called by Hon. P. P. Claxton, United States Commissioner of Education, appointed by the President, and directing general educational affairs throughout the United States, said conference being called to consider the condition of the public schools and the work of the public schools in said seven States during the period of the war and immediately following the war."

To this petition and to both counts thereof respondent demurred. His demurrer, omitting formal parts, runs thus:

"1st. Because neither said first nor second count states facts sufficient to constitute a cause of action against this respondent.

"2nd. Because neither said first nor second count is sufficient in law.

"3rd. Because it appears upon the face of said first and second counts and each of them, that the ex-

penses made and incurred by relator, to compel the payment of which relator asks for this court's extraordinary writ of mandamus, were expenses made and incurred without the State of Missouri.

"4th. Because Section 10922, Revised Statutes 1909, and Section 22, Laws 1917, page 10, set up in each of said counts of said petition, show upon their face that the money appropriated for the payment of traveling expenses incurred by relator's department can be used only in payment of expenses made and incurred within the State of Missouri."

There is no point made touching whether mandamus is the proper remedy, hence we make none and do not examine the point, assuming, as learned counsel upon both sides do, that mandamus is the proper remedy.

The point presented is a narrow one. Is the State under the law which provides for the duties of the State Superintendent of Public Schools (hereinafter called for brevity, Superintendent) liable to pay the traveling expenses of such Superintendent, incurred under the circumstances set forth in our statement of the case? We see no vital difference in the applicatory law as between the expenses involved in the two counts, and therefore the reasons for the payment or refusal of payment of the expenses incurred upon the trip to Portland ought to be decisive of the other. We consider the first count, for if there be any difference, there are reasons favoring payment of the expenses sued for in the second count which are not found in the first count. The effect of the demurrer is to admit that petitioner is a member of the National Educational Association; that such association is composed of the Superintendents of Public Schools of the various States of the Union, and of leading educators and teachers of the United States; that the purpose of this association and of the annual meetings held by it "is to promote, foster and encourage the cause of public education, and to elevate the standard and efficiency of instruction . . . throughout the United States;" and that the petitioner believed that attend-

ance upon this meeting was useful and necessary, and that it in fact was "useful and necessary to the proper and efficient discharge of the duties of his said office and tended to promote and advance the cause of public education in Missouri, and to elevate the standard and efficiency of the instruction given in the public schools of this State."

The demurrer does not admit the petitioner's conclusions of law set forth in his petition, to-wit, that he made such trips and incurred the expenses in dispute "in connection with and in the discharge of the duties of his office . . . and that his attendance at said meeting was authorized by the laws of this State prescribing his powers and duties." These are questions of law for this court, and they are the only questions of either law or fact in the case.

The Legislature recognized the necessity of providing a fund to cover the travelling expenses of the office of State Superintendent of Public Schools, for it appropriated therefor the sum of $14,000, to cover these expenses during the biennial period ending December 31, 1918. [Sec. 22, p. 10, Laws 1917.] This was tantamount to a legislative construction of Section 10922, Revised Statutes 1909, as meaning that *some travel* and therefore *some traveling expenses,* are necessary under the law which prescribes the duties of the Superintendent. However, another statute, indicates this necessity more clearly than the legislative interpretation mentioned. For pertinent parts of the statute prescribing the place of residence and the place wherein the office of the Superintendent shall be kept, says:

"He shall reside and the books and papers of his department shall be kept at the seat of government, where a suitable office shall be provided by the State, at which he shall give his attendance when not absent on public business." [Sec. 10920, R. S. 1909.]

But these statutes and the legislative construction mentioned, while making it clear that some travel is necessary, do not make clear *what travel may be at*

*the expense of the State.* It is persuasive, however, that if the Legislature had in mind to restrict the expenditure of the money appropriated to expenses incurred in travel wholly within this State, it could, by adding three words to the language of the appropriation, have put this question beyond cavil. The authority to travel at the expense of the State, we concede, must be found in some statute, or arise by the most obvious implication from some statute, otherwise there is no obligation on the part of the State to pay the expenses incurred thereby. The statute which prescribes the duties of the Superintendent, so far as it is in any way pertinent to the point involved, reads thus:

"It shall be the duty of said Superintendent of Public Schools to make an annual report on or before the first Wednesday in January, in each and every year, to the General Assembly, when that body shall be in session any such year; and when not in session any one year, then the report shall be made to the Governor, who shall cause the same to be published, and shall also communicate a copy thereof to the next General Assembly. The State Superintendent, in the annual report of his labors and observations, shall present . . . a statement of plans for the management and improvement of public schools, and such other information relative to the educational interests of the State as he may deem important. He shall, in person or by deputy, confer with and advise county officers on all matters pertaining to the school law and school directors, and all other school officers, teachers and patrons of the public schools. He shall have power, in person or by deputy, to visit and inspect schools, and make suggestions in regard to the subject-matter and methods of instruction offered, the control and government of the school, and the care and keeping of all school property. He shall have power to attend and assist in meetings of teachers, directors or patrons, and to in every way elevate the standard and efficiency of the instruction given in the public schools of the

State.   All moneys reasonably expended in the execu-
tion of these duties, as prescribed by this section, shall,
upon due proof, be allowed by the auditor, and paid
out of the State Treasury: *Provided,* that no personal
expenses be included in the above allowance.''   [Sec.
10922, R. S. 1909.]

Does this statute prescribe such duties as may in
the fulfillment thereof necessitate incurring expenses
such as those in dispute?   We think it does.   Among
the Superintendent's statutory duties it is written:
''He shall have power to attend and assist in meetings
of teachers  .  .  .  and to in every way elevate the
standard and efficiency of the instruction given in the
public schools of the State.''   Should it be contended
that the ''meetings of teachers'' mentioned are meet-
ings of state or local teachers, and not meetings of
national or international ''leading teachers and educa-
tors without the State,'' so much on this phase may
be conceded.   But there yet remains the incumbent
duty ''to in every way elevate the standard and effi-
ciency of the instruction given in the public schools of
this State.''   This is a broad and comprehensive duty,
and in fulfilling it, of necessity much is left to the dis-
cretion of the Superintendent.   It is difficult to see how
it is to be complied with unless the officer whose official
duty it is to elevate standards and efficiency shall
have an opportunity to ascertain what standards and
efficiency have been attained by teachers and educators
in other States of the Union.   Unless we are now to build
a Chinese Wall about this State, and thus inferentially
serve notice to all and sundry that in educational
matters, we have attained absolute perfection in
standards and efficiency, and that hereafter we shall
go to school to no man but a native, to no school
but a local one, and that none of the other forty-seven
states are capable of adding jot or title to our edu-
cational knowledge, standard or efficiency, we must
take steps to ascertain the progress which is being
made by others. The motto, *nobis est demonstrandum,*
which persiflage has attributed to us, may in some

respects be wholly commendable, but we ought not to carry it so far as to assume that there are none capable of imparting information to us. It is, we think, necessary if standards and efficiency in education in this State are to be kept abreast of the progress in other States, that the head of the public school system should be advised as to what educators elsewhere are doing. No better way perhaps for doing this has been devised than by conventions and conferences of the leaders in educational progress. That it is possible for the privilege of attending such conventions at the expense of the State to be. abused is no argument in favor of entirely cutting off the ·necessary privilege. If it is proper and necessary to attend these conferences, some one must be vested by law with the authority of deciding upon the expediency of it. We think the question of the necessity and expediency of incurring the expense in issue for the purpose mentioned has been by the statute conferred on the Superintendent of Schools, and not upon the State Auditor. If the privilege be abused the people exercising their political power can correct the abuse at the polls. Obviously we are not holding that if the expenses incurred were for travel which, patently, had no relevancy to the Superintendent's statutory duties that the Auditor would be bound to audit them, merely because the Superintendent had approved them. That situation is not presented by the record before us.

We are of opinion that the statute fixing the duties of the State Superintendent of Public Schools, holds in contemplation the necessity of attendance upon meetings and conferences and conventions of the sort here in question. It follows that the preliminary writ herein should be made peremptory. Let it be so ordered. All concur except *Walker, J.,* who dissents in a separate opinion.

WALKER, J. (dissenting)—The State Superintendent of Public Schools is an official whose duties are defined, compensation fixed, and the expenditures

of his office regulated by statute. To this we must look to determine his right to demand payment for expenses incurred in attending national educational associations. If the statute defines such attendance either by express terms or reasonable implication as one of his duties, then a basis has been established for the allowance of this claim. Otherwise, not. Even the Legislature itself could not under our State Constitution (Art. IV., sec. 48) appropriate public money to pay such expenses in the absence of a statute authorizing or requiring such attendance and thereby rendering it a duty. If the Legislature has no such power, can it be said, with proper regard for the rules of interpretation, that the courts, which can only define but cannot create power, possess it?

An examination of the statute defining the duties of the Superintendent does not disclose any intimation of a requirement that he shall attend educational associations. However much, therefore, we may be inclined to the conclusion that such attendance may prove beneficial in tending to broaden the mental horizon of the Superintendent, and thereby render him more efficient in the discharge of his authorized duties, we cannot lend our approval in the absence of at least a permissive statute to the expenditure by him of public money limited only to his discretion. Such a ruling, would, in our opinion be the making, rather than the declaring, of a law.

As the barber said to the coal heaver in declining to render him tonsorial service, "The line must be drawn somewhere." We draw it at the Constitution. Wherefore, this dissent.