THE STATE OF NEBRASKA, EX. REL. JEFFERSON B. WESTON, v. F. W. LIEDTKE, AUDITOR of PUBLIC ACCOUNTS.

**Land Commissioner under Statute of June 24, 1867.** The relator was state auditor during the years 1875 and 1876, and under the provisions of the act of June 24, 1867, he was *ex officio* state land commissioner at a salary of $1,000 per year. The constitution of 1875, which came into force November 1, 1875, provided for the election of a commissioner of public lands and buildings at the annual election to be held in November, 1876; and that his term of office should begin on the first Thursday after the first Tuesday in January, 1877. The said constitution also contains the following provisions:

"Section 2, art. V.  *  *  *  None of the officers of the executive department shall be eligible to any other state office during the period for which they shall have been elected."

"Sec. 23, art. XVI.  The present executive state officers shall continue in office until the executive state officers provided for in this constitution shall be elected and qualified."

*Held* that the relator was entitled to the salary of land commissioner at the rate of $1,000 per annum for the months of November and December, 1875, and for the entire year 1876.

ORIGINAL application for Mandamus.

*J. B. Weston, pro se.*

*F. W. Liedtke, in personam.*

COBB, J.

The office of state land commissioner was created, the duties of such office devolved upon the state auditor, and the salary for the services thereof fixed at $1,000 per annum, to be paid quarterly, by an act approved June 24, 1867. Gen. Stat., 990. The relator, who was the state auditor, discharged the duties of state land commissioner during the years 1875 and 1876.

He drew his salary for ten months of the year 1875, leaving the same for two months of that year, and for the whole of 1876, undrawn. The sum of $2,000 being appropriated by the act of February 23, 1875, for salary of land commissioner, there remains of such appropriation $1,166.67, which the relator, having discharged the duties of the office for the whole of said time, is entitled to, unless the provisions of the constitution of 1875 have intervened to cut off his right thereto.

The respondent makes the point that the office of land commissioner, as created by the act of June 26, 1867, was abolished by section 26 of Article V. of the constitution of 1875. This position does not seem to be tenable, except in the sense that all of the offices, as created by the former constitution, were abolished. True, the office of land commissioner, previously a statutory office, was, by the force of the new constitution, lifted to the dignity of a constitutional office, and made an elective one; otherwise there is nothing to distinguish this from any other of the executive state offices, so far as the effect of the new constitution upon it is concerned. I do not think that any such meaning as that contended for can be placed upon section 26, Article V.; but, on the contrary, that by the necessary implication of the language of said section, the office of land commissioner is continued. Section 24 fixes the salaries of the governor, auditor, treasurer, secretary of state, attorney general, superintendent of public instruction, and commissioner of public lands and buildings; fixes the pay of the lieutenant governor, etc. Section 25 provides that the officers mentioned in said article shall give bonds, etc.; then follows the 26th section, which provides that "no other executive state officer shall be continued or created, and the duties now devolving upon officers not

provided for by this constitution shall be performed by the officers herein created." The language of this section clearly shows that it was intended as a limitation of legislative power, and not to apply in any manner to any of the officers named in the 24th section. The land commissioner, or commissioner of public lands and buildings, is not an *other* executive state officer, nor is he an officer "not provided for by this constitution."

The respondent also makes the point: "That by reason of section 24, Article V. of the constitution of 1875, the salary of the auditor of public accounts was established at twenty-five hundred dollars per annum, in lieu of all fees, perquisites of office, or other compensation." Upon this point it may be said the offices of auditor and land commissioner were never united, although, by the act of 1867, it was the duty of one person to discharge the duties of the two offices; yet such duties were inherently and necessarily separate and different; and for this reason, no doubt, the constitution provided that after the 1st of January, 1877, the said two offices should be held by as many different persons. It is scarcely possible, then, that the framers of that instrument should have intended that, for the fourteen months intervening between the taking effect of the new constitution and the going into office of the first executive state officers under it, the two offices should be consolidated, and the compensation for services of one paid for as perquisites of the other. Certainly, had the framers of the constitution intended any such unusual thing, they would have used clear and unmistakable language to that effect, which quality cannot be claimed for the section quoted.

The third and last point made by respondent is: "That by reason of section 2 of Article V. of the con-

stitution of 1875, the relator, while filling the office of auditor of public accounts, could not also hold the office of state land commissioner." The section referred to reads as follows: "Sec. 2. No person shall be eligible to the office of governor or lieutenant governor who shall not have attained to the age of thirty years, and been for two years next preceding his election a citizen of the United States and of this state. None of the officers of the executive department shall be eligible to any other state office during the period for which he shall have been elected."

It will be sufficient answer to the last proposition to say that in and by section 23 of article XVI, the constitution passed upon the eligibility of the relator to hold said office for the term for which he claims the salary in this case. The said section reads as follows: "Sec. 23. The present executive state officers shall continue in office until the executive state officers provided for in this constitution shall be elected and qualified." The relator was one of the "present executive state officers" as well in his official capacity of land commissioner as that of auditor, and the above section continues him in office, indeed in both of said offices, until the election and qualification of his successor, which events were not provided to be consummated until the beginning of 1877.

I therefore reach the conclusion that the relator is not precluded from his right to his said salary by reason of any provision of the constitution of 1875, and that consequently he is entitled to the writ as prayed for. But as the relator could, as the several quarters of salary become due, have issued his warrant therefor and received the several amounts from the state treasury, while, as there was some difference of opinion as to his right, he is to be commended for refraining from doing so until the matter could be decided by the

proper authority, yet by so doing he set a precedent to his successor which this court cannot punish him for following by the interposition of costs.

WRIT ALLOWED.