THE STATE ex rel. JOHN Q. BYBEE v. GEORGE E. HACKMANN, State Auditor.

In Banc, December 12, 1918.

1. **PUBLIC MONEYS: Payment: Dependent on Statute: Duty Implies Means for Effectual Performance.** It is fundamental that no officer can pay out the money of the State except in pursuance to a statute authorizing and warranting the payment. But when a

State ex rel. Bybee v. Hackmann.

duty or power is conferred by statute upon a public officer, all necessary authority to make such power fully efficacious or to render the performance of the duty effectual is conferred by implication.

2. ———: State Board of Equalization: Employment of Stenographer. Since the statute which prescribes the duties of the State Board of Equalization says that it may "take all evidence it may deem necessary" it follows by necessary implication that the board may employ a stenographer to take and transcribe the evidence which the board deems necessary to be taken at its hearings.

3. ———: ———: ———: Taking Evidence. Since the statute says that the State Board of Equalization shall have power to "take all evidence it may deem necessary to ascertain the value of the property in the different counties of the State," and other kindred statutes contemplate that the board, in ascertaining the value of the property, may have before it multitudinous figures of the taxable value of farms and divers classes of personalty, the word "take" is a much stronger word than "hear," and may reasonably mean to "take down" or "write down;" and the employment of a stenographer is the most expeditious and economical method of taking down and transcribing such data for the use of the members of the board.

## MANDAMUS.

WRIT ISSUED.

*A. T. Dumm* for relator.

(1.) The State Board of Equalization had both constitutional and statutory authority to employ relator for the purposes for which he was employed. Sec. 18, art. 10, Constitution 1875; Secs. 11410, 11577, R. S. 1909; Railway Co. v. State Board of Equalization, 64 Mo. 294; Washington Co. v. Railway Co., 58 Mo. 378; State ex rel. v. Gates, 67 Mo. 143; State ex rel. v. Reber, 226 Mo. 237; 23 Am. & Eng. Ency. Law (2 Ed.), p. 364; Laws 1917, p. 46; Laws 1917, p. 545, sec. 15. (2) Mandamus is relator's proper and only remedy. And the State Board of Equalization which employed him pursuant to law, having approved his account, it became the duty of respondent to audit the account and draw his warrant on the treasury for its payment; and having refused to do so, the peremptory writ of mandamus should be award-

ed. State ex rel. v. Mason, 153 Mo. 56; State ex rel. v. Wilder, 199 Mo. 470; 19 Am. & Eng. Ency. Law (2 Ed.), p. 782; Sec 11813, R. S. 1909.

*Edward W. Foristel* for respondent.

(1)    The State Auditor may refuse to draw a warrant, although the correctness of the expense is certified to. State ex rel. McMurty v. Thompson, 37 Mo. 176; State ex rel. Lindley v. Clark, 61 Mo. 263.    (2)    The State Auditor was justified in refusing to draw the warrant because the State Board of Equalization had no authority to employ a stenographer at the expense of the State.    Benton v. Decatur County, 36 Iowa, 504; Cohen v. Commonwealth, 6 Pa. 111; Laws 1917, sec. 14, p. 545; Laws 1917, sec. 15, 545; R. S. 1909, sec. 11807; R. S. 1909, sec. 11411.

FARIS, J.—This is an original proceeding by mandamus to compel respondent as State Auditor to audit for payment an account of the relator for services rendered by him as stenographer in taking down in shorthand and transcribing the evidence heard by the State Board of Equalization.

The petition filed herein upon application for our alternative writ makes clear the grounds upon which the relief prayed for is bottomed.    Pertinent parts of that petition read thus:

"Your petitioner says that pursuant to said constitutional and statutory provisions, above cited and quoted, said State Board of Equalization, acting by and through its duly and legally constituted agent, the secretary of said board of equalization, on the 2nd day of July, 1918, employed your petitioner as an expert shorthand reporter or stenographer to take stenographic notes of the evidence taken before said board and to transcribe the same; and that on the 9th day of July, 1918, the said State Board of Equalization, by order duly entered on the records of said board, duly approved the appointment and employment of your petitioner for the purposes aforesaid.

"Your petitioner alleges that pursuant to said appointment and employment as aforesaid, he entered upon the duties of said employment on the 8th day of July, 1918, and continued to take the evidence at hearings before said board for seventeen days thereafter, which, at $10 per day, amounts to the sum of $170; that your petitioner was ordered by said board to transcribe the evidence taken by him at the hearing before said board, and to deliver to said board, for the use of the members thereof, one original copy and five carbon copies of said evidence so transcribed, and that your petitioner, in obedience to said order of said board, did furnish to said board one original copy and five carbon copies of said evidence so taken and transcribed by him as aforesaid, charging therefor 15 cents per folio, or 45 cents per page, for said original copy and 5 cents per folio, or 15 cents per page, for each of said five carbon copies; that there were 330 pages of said evidence, so taken and transcribed by him as aforesaid, which, at 45 cents per page for said original copy, amounts to $148.50; and that the five carbon copies, furnished for him as aforesaid at 15 cents per page for each copy, amounts to $247.50; and that the items of said account of your petitioner for his services aforesaid more fully and particularly appear from an itemized statement hereto attached and made a part of this petition and marked 'Exhibit A.'

"Your petitioner says that the total of all the items of said account, for the services rendered by him as aforesaid, is $566; and your petitioner says that he presented said account to said State Board of Equalization for its approval, and that on the 24th day of September, 1918, said board duly approved your petitioner's account in said sum of $566; and your petitioner says that said charges, so made by him as aforesaid, were and are the legal and reasonable charges for such services.

"Your petitioner says that, on the 27th day of September, 1918, he duly presented to and filed with the said George E. Hackmann, State Auditor as aforesaid, said itemized statement and account (so approved by

said State Board of Equalization, as aforesaid) in said sum of $566, for audit, allowance and payment as a claim against the State of Missouri, and to be paid out of the moneys appropriated for the cost of assessing and collecting the revenue for the years 1917 and 1918, including the contingent expenses of the State Board of Equalization, said moneys being appropriated by Act approved April 9, 1917, entitled, 'An act to appropriate money for the cost of assessing and collecting the revenue for the years 1917 and 1918, including the contingent expenses of the State Board of Equalization, with an emergency clause,' and being Section 1, page 46, Laws of Missouri 1917; that at the time your petitioner presented and filed said account with the said George E. Hackmann, State Auditor as aforesaid, for audit, allowance and payment, there was and is now in the State Treasury, to the credit of the appropriation for the cost of assessing and collecting the revenue for the years 1917 and 1918, including the contingent expenses of the State Board of Equalization, more than sufficient money to pay said account for said sum of $566, and that it then and thereupon became the duty of the said George E. Hackmann, State Auditor as aforesaid, to audit and allow said account in said sum of $566, and to draw his warrant upon the State Treasury in favor of your petitioner for the payment of the same; but your petitioner says that the said George E. Hackmann, State Auditor as aforesaid, wrongfully failed and refused, and does still wrongfully fail and refuse, to audit and allow said account and to draw his warrant upon the State Treasury in favor of your petitioner for the payment of the same, in said sum of $566, or in any other sum.''

The return to our writ is signed and was filed herein by private counsel and not by the chief law-officer of the State. However, absent any objection, we assume of course ample authority in private counsel to appear here and represent respondent, even though the statutes in such cases made and provided might lead us to expect to see the State Auditor represented by the Attorney-General in a case like this. Be all this as may be, this

return serves to make clear the issues and the whole of them involved in this controversy. So much of this return as seems meet to this end reads thus:

"Now comes George E. Hackmann, State Auditor, respondent herein, and for his return to the writ of mandamus heretofore issued, says that relator ought not to have this writ of peremptory mandamus, and for reason thereof states that the employment of relator by the State Board of Equalization was not pursuant to or authorized by any statutory or constitutional provision of the State of Missouri, and was not authorized by law.

"Respondent states that the charge made by relator for the services rendered, to-wit, the sum of $566, is not a legal charge against the State of Missouri, and no portion of said charge is legal or authorized by law, but respondent admits that the said sum of $566 is the reasonable value for the services performed.

"Respondent denies that it at any time became the duty of respondent to audit and allow said account in the sum of $566 or any other sum, or to draw his warrant upon the State Treasury for the payment of same.

"Respondent admits that he refused, and still refuses, to audit and allow said account and to draw his warrant upon the State Treasury for the payment of same, but respondent states that his said refusal is not wrongful, but that he refused to audit and allow said account and to draw his warrant upon the State Treasury in favor of relator for the reason that the said claim of relator is not a proper and legal claim against the State: that the employment of relator by the State Board of Equalization was without authority or warrant of law, and that respondent had no legal right or authority to audit said account or to draw a warrant upon the State Treasury for same."

Upon the coming in of this return relator, averring its insufficiency as a matter of law, moved for judgment upon the pleadings. Therefore, since the return expressly admits that the sum demanded is a reasonable charge for the services rendered, the case is at issue upon a single clear-cut question of law.

That question simply stated is this: Has the State Board of Equalization authority under the law to employ a stenographer at the expense of the State? If such Board of Equalization (hereinafter for brevity, called simply the board) has any such authority, this authority must be bottomed on some statute. For it is fundamental that no officer in this State can pay out the money of the State except pursuant to statutory authority authorizing and warranting such payment. [Lamar Twp. v. Lamar, 261 Mo. 171.] But it is also well settled, if not fundamental law, that whenever a duty or power is conferred by statute upon a public officer, all necessary authority to make such powers fully efficacious, or to render the performance of such duties, effectual, is conferred by implication. [Hannibal, etc., Railroad v. Marion Co., 36 Mo. 303; Walker v. Linn Co., 72 Mo. 650; Sheidley v. Lynch, 95 Mo. 487.] So much being true it is urged that since the statute which defines the duties of the board provides that it may "take all evidence it may deem necessary," it follows by necessary implication that a stenographer may be employed to take and transcribe the evidence which the board deems necessary to be taken. We think this contention must be sustained. For this statute reads thus:

"The state board of equalization shall have power to send for persons and papers, to administer oaths through its officers or agents, and to take all evidence it may deem necessary to ascertain the value of the property in the different counties in the State." [Sec. 11410, R. S. 1909.]

It will be observed that the above statute does not say that the board shall *hear* evidence, but *take* evidence. And this duty of taking evidence is left to the discretion of the board. For by this section the broad *"power"* is conferred upon the board "to take all evidence it may deem necessary" in the performance of its duty "to ascertain the value of the property in the different counties in the State." While, of course the word "take" as here used does not unequivocally mean to *take down*, or *to write down* (37 Cyc. 665), it is yet toward this view

a much stronger word than "hear" would have been had it been employed. Construing the above section in order to get at its meaning *in pari materia* with other provisions of the article which prescribes in detail the duties of the board, we see that by the requirements of Section 11412, Revised Statutes 1909, the evidence which (if the board deem necessary) it may take, will inevitably consist largely in figures representing taxable values, and might well consist in figures representing the values of practically the whole of the farms and the acreage of each of the 114 counties in Missouri, as well as of the divers classes of personal property therein and in the City of St. Louis. It is too plain for argument that no memory is equal to the task of retaining the figures so representing such values, and of comparing them with other values of like taxable property or commodities in other, or in all the counties of this State. If the work of taking evidence which is clearly permissible under this statute is to be of any use in the duty of comparing and equalizing taxable values, such evidence must of necessity be put in some such permanent form as to permit of careful examination and study thereof. No method is known by which this may be done except by having it taken down in writing, and certainly no method of taking evidence down in writing is more expeditious, or as economical in time and expense, as that of taking it down in shorthand and afterwards transcribing it. Attending to another phase of conserving time, the question in the last analysis might well resolve itself into the seemingly simple problem, whether the board should employ a stenographer at ten dollars a day to write down evidence in shorthand, or whether the board, neglecting to this extent other manifold official duties of its component members, should stay in session at twenty-five dollars a day while its secretary is taking down the necessary evidence in long hand?

Viewed from any angle, the refusal to audit this account cannot be upheld in the face of the statute we quote and of the light shed thereon by the nature of the duties incumbent by law upon this board.

Without more we are of the opinion that the alternative writ heretofore issued by us should be made peremptory. Let this be done and let our peremptory writ issue. *Bond, C. J., Walker, Woodson* and *Williams, JJ.,* concur.