THE STATE ex rel. JAMES T. BRADSHAW, Warehouse Commissioner, v. GEORGE E. HACKMANN, State Auditor.

In Banc, January 25, 1919.

1. **STATE MONEYS: Payment: Power of Officer: Implied.** No officer can pay out the money of the State except pursuant to statutory authority authorizing and warranting the payment. But whenever a duty or power is conferred by statute upon a public officer, all necessary authority to make such powers fully efficacious or to render the performance of such duties effectual, is conferred by implication.

2. ————: ————: **Traveling Expenses: Relegation to Act Defining Officer's Duties.** Where an appropriations act appropriates money to pay the "traveling expenses" of a public officer or department, but does not say where or upon what business the travel may be done, but does say, in a different section, that "none of the money herein appropriated shall be used for traveling expenses, unless said money is specifically authorized by law to be so used," it is necessary to refer to the law creating the office and defining the officer's duties, to ascertain where and upon what business travel may be done at the expense of the State.

3. ————: ————: ————: **Outside The State: Warehouse Commissioner.** Where the only words in the statute defining the duties of the Warehouse Commissioner which relate to travel are that he shall "examine into conditions and management and all matters concerning the business of warehouses and elevators" and at least once in every six months visit "each warehouse or elevator in this State and personally inquire into the management" thereof, and the only words in the Appropriations Act are that a named sum is appropriated for "rent of offices, postage, telephone, traveling expenses, machinery," etc., for his office, which act in a subsequent section says that "none of the money herein appropriated shall be used for traveling expenses, unless said money is specifically authorized by law to be so used," he cannot be compensated for necessary expenses incurred in traveling to Washington, D. C., to confer with the Agricultural Department and "to receive instructions with reference to a systematic method of inspecting grain throughout the different states of the Union;" for however crying the exigencies brought about by the World War, travel outside the State at its expense is not authorized by the said statutes, and the court cannot compel the State Auditor to allow his account, but must relegate the question of his compensation to the Legislature.

4. **MANDAMUS: Pleading: Indefinite Statement.** A statement in a petition for mandamus against the State Auditor to compel h'm to approve a State officer's expense account, that the expenses for which the allowance is asked "are listed as incidental and official expenses" is too vague and indefinite, and does not give that precise information which the court must have in order to grant relief.

## Mandamus.

WRIT QUASHED.

*Frank W. McAllister,* Attorney-General, *Shrader P. Howell,* Assistant Attorney-General for respondent.

(1) The demurrer filed by respondent does not admit relator's conclusions of law as set out in the petition, but only the facts well pleaded. State ex rel. Lamkin v. Hackmann, 204 S. W. 514; Paving Company v. Fleming, 251 Mo. 222. (2) Neither the statute creating the office, nor the act making the appropriation for the State Warehouse Department designates, or suggests, any duties to be performed outside of the the State, and therefore expenses incurred in traveling beyond the limits of Missouri do not constitute a legal charge against the public funds. Laws 1913, p. 354; Laws 1915, p. 302; Laws 1917, p. 18, sec. 56; Laws 1917, p. 26, sec. 80a; Sec. 48, Art. 5, State Constitution. (3) To authorize the expenditure of the public funds to cover traveling expenses outside the State, the officer so claiming must point either to an appropriation act expressly authorizing the said expenditures, or to the act designating his duties from which it may be naturally and reasonably inferred that such travel is necessary to the proper discharge of the official duties cast upon him. Secs. 10920, 10922, R. S. 1909; State ex rel. Lamkin v. Hackmann, 204 S. W. 513; Laws 1917, p. 26, sec. 80a. (4) Respondent contends that admitting all the facts well pleaded in count three relator has failed to state facts sufficient to constitute a cause of action and, therefore, the relief prayed for must be denied. State ex rel. Bartley v. Governor, 39 Mo. 401; School District v. Lauderbaugh, 7 Mo. 194;

State ex rel. v. Railroad, 77 Mo. 147; State ex rel. v. Hudson, 13 Mo. App. 62; Hambleton v. Dexter, 89 Mo. 191. The petition and writ must state facts in issuable form which clearly shows relator is entitled to the particular relief prayed for. State ex rel. v. Everett, 52 Mo. 93; Curry v. Cabliss, 37 Mo. 334; State ex rel. v. Stone, 269 Mo. 342. (5) The insufficiency of the facts alleged in count three by failing to show a clear right to the peremptory writ can properly be raised on demurrer. State ex rel. v. Everett, 52 Mo. 93; State ex rel. v. Allen, 187 Mo. 560; State ex rel. v. Hitchcock, 171 Mo. App. 114; State ex rel. v. County Court, 41 Mo. 560.

FARIS, J.—This is an original proceeding in three counts, brought by relator, who is the State Warehouse Commissioner, against respondent as State Auditor, to compel by mandamus the auditing for payment of certain accounts for expenses incurred in traveling, as it is averred, upon the business of the State.

The case is at issue upon demurrers to the alternative writ of both a general and a special sort. From the legal viewpoint the case may be considered and dealt with, both as to the statement of facts and the discussion of the law, upon the principles presented by the first and third counts.

Omitting merely formal parts, and the prayer for relief, all of which are conventional, the first count reads thus:

"Your petitioner says that in the month of March, 1918, in connection with and in the discharge of the duties of his office as State Warehouse Commissioner of Missouri, it became necessary for him to go to Washington, D. C., on official business, for the purpose of conferring with the Agricultural Department of the Government of the United States, in order to receive instructions with reference to a systematic method of inspecting grain throughout the different states of the Union; and that the attendance of your petitioner at said meeting in said month of March,

1918, was by him believed to be, and your petitioner alleges that it was, useful and necessary to the proper and efficient discharge of the duties of his said office, and tended to promote and advance the inspection of grain in the State of Missouri; that his attendance in Washington, D. C. was authorized by the laws of this State prescribing his powers and duties, and more particularly by the provisions of an act of the Legislature creating the office of Warehouse Commissioner and defining his duties, approved, March 20, 1913, and found at page 354, Laws of Missouri of 1913, and amendments thereto.

"Your petitioner says that in attending said meeting with said Agricultural Department at the time and place aforesaid, he actually expended the sum of $157.40, and that said amount was the reasonable and actual expense of his said attendance at said meeting, including necessary railroad fare, hotel bills and other expenses reasonably and actually necessary to his attendance at said meeting; and that no personal expenses were or are included in said above mentioned sum.

"Your petitioner says that thereafter, and on the 23rd day of March, 1918, he presented to the said George E. Hackmann, State Auditor, as aforesaid, his account in said sum of $157.40 (which said account had theretofore been duly approved by petitioner, as State Warehouse Commissioner of Missouri), for allowance as a claim against the State of Missouri, as authorized and provided by the laws of the State of Missouri, and to be paid out of the moneys appropriated for the contingent and traveling expenses of the Department of State Warehouse Commissioner, said money being appropriated by Act approved April 11, 1913, entitled, 'An Act to appropriate money for the support of State Government, the payment of the contingent and incidental expenses of the State Departments, etc.,' and being Section 56, page 18, of the Laws of Missouri of 1913; that at the time your petitioner presented said account to the said George E. Hackmann,

State Auditor, as aforesaid, for allowance, there was, and is now, in the State Treasury, to the credit of the traveling expense account of the moneys appropriated for the contingent · and traveling expenses of the Department of State Warehouse Commissioner, more than sufficient money to pay said account of $157.40; and that it then and there became the duty of the said George E. Hackmann, State Auditor, as aforesaid, to audit and allow said account in said sum of $157.40; but your petitioner says that the said George E. Hackmann, State Auditor, as aforesaid, wrongfully failed and refused, and does still wrongfully fail and refuse to audit said account in said sum of $157.40, or in any other sum.''

To this count, as stated above, both general and special demurrers have been interposed by respondent. Such parts of these demurrers as apply generally to all three counts and such as specifically refer to the first and second counts (the latter of which being of the identical general character of the first count, we are here considering with it as forecast, supra,) read thus:

''First: Because the said counts one, two and three, or either of them, do not state facts sufficient to constitute a cause of action against the respondent herein.

''Second: Because said counts one, two and three, or either of them, and all the matters and things therein stated and set forth are not sufficient in law to entitle the relator to the relief prayed for, or any other relief.

''Third: Because it appears upon the face of said first and second counts and each of them, that the expenses made and incurred by relator were expenses made and incurred in traveling without the limits of the State of Missouri, and therefore said expenses were incurred without authority of law.

''Fourth: Because the act of the General Assembly approved March 20, 1913, and found at page 354, of the Laws of Missouri of 1913, and amendments thereto, and the act making appropriation for the department

of State Warehouse Commissioner referred to and set out in counts one and two, and each of them, of the alternative writ and petition, show upon their face that the money appropriated for the payment of traveling expenses by relator's department can be used in payment for traveling expenses made and incurred only within the limits of the State of Missouri.''

The third count of said petition and alternative writ, again omitting conventional parts as stated above, reads thus:

''Your petitioner says that from the 1st day of January, 1917, up to and including the first day of November, 1918, while acting as State Warehouse Commissioner of Missouri, it became necessary for him, in the discharge of the duties of his office, as aforesaid, to travel on official business from one point in the State of Missouri, to another point for the purpose of performing his duties as such State Warehouse Commissioner; that such travel was by him believed to be, and your petitioner alleges that it was useful and necessary to the proper and efficient discharge of the duties of his said office, and tended to promote and advance the inspection of grain in the State of Missouri, that said travel was authorized by the laws of this State prescribing his powers and duties, and more particularly by the provisions of an act of the Legislature creating the office of Warehouse Commissioner, defining his duties, and approved March 20, 1913, and found at page 354, Laws of Missouri of 1913, and amendments thereto. Your petitioner says that in traveling on official business, as aforesaid, at the times aforesaid, he actually expended the sum of $101.60, embraced in expense, filed with the Auditor, containing a statement as to what such expenditures were for between the said dates of January 1, 1917, and November 1, 1918, and that said amounts were the reasonable and actual expenses in traveling, as aforesaid, including necessary railroad fare, hotel bills and other expenses reasonably and actually necessary, as aforesaid; and that no personal expenses were or are included in said above

mentioned sum of $101.60. That the items contained in petitioners expense accounts, filed with the State Auditor of Missouri, are listed as incidental and official expenses, and embrace only articles actually and reasonably necessary for the petitioner to expend in looking after the business of the State of Missouri, and include no personal expenses of any kind.''·

In addition to the general demurrer to the third count, respondent demurs thereto specially for divers reasons. Such special reasons for demurrer as have reference to the third count read thus:

''Fifth: Because the allegations contained in the said third count of the alternative writ and petition are vague, uncertain, and are insufficient in law to constitute a cause of action against the respondent herein.

''Sixth: Because the said third count of the alternative writ and petition wholly fails to state how many of said expense accounts were presented, or the amount of each, or the dates on which said individual accounts were filed with the State Auditor and the said accounts are not otherwise sufficiently identified so as to enable the writ of mandamus to be based thereon.

''Seventh: Because said third count of the alternative writ and petition fails to itemize, or state, with any definiteness or certainty the nature or character of said alleged ''incidental and official expenses'' and therefore respondent cannot make good issues upon the said allegations as therein contained.

''Eighth: Because said third count of the alternative writ and petition does not show that said expense accounts prior to their presentation to the respondent, had theretofore been approved by the relator herein as required by statute.

''Ninth: Because said third count of the alternative writ and petition fails to show that the Legislature of Missouri had theretofore made an appropriation against which respondent's warrant could legally be drawn for payment of said alleged individual expense accounts as stated in said count.''

The case is at issue and up for judgment upon all matters well pleaded in the alternative writ, the truth whereof the demurrer admits. Upon these facts how stands the law of the case?

I. We approach the examination of the question whether the State is liable to pay the relator's account for traveling expenses incurred by him in going to and returning from Washington, D. C., with the axiom, several times ruled by us to be fundamental, "that no officer in this State can pay out the money of the State, except pursuant to statutory authority authorizing and warranting such payment." [State ex rel. Bybee v. Hackmann, 276 Mo. 110; Lamar Twp. v. Lamar, 261 Mo. 171.] The only exception to this rule (and *it is not in fact an exception*) is "that whenever a duty or power is conferred by statute upon a public officer, all necessary authority to make such powers fully efficacious, or to render the performance of such duties effectual, is conferred by implication." [State ex rel. Bybee v. Hackmann, *supra.*] Under this rule we perforce must look to the statutes which created the office of Warehouse Commissioner and which prescribe his duties for authority to make our writ peremptory. It we find no such authority, either express. or which arises from such necessary implication as is above defined, it is manifest that we are without power to compel respondent to audit relator's expense account, for expenses incurred by him in going to and returning from Washington. The second count deals with the expenses incurred by relator on a trip to Minneapolis, Minn. The latter count is deemed by us to fall into the identical legal category with the first count, but it possesses, we think, less compelling merit in favor of allowance, than does the first count, with which latter therefore we deal as a fair, legal type of the second count.

In passing, we may observe that relator's learned counsel urges that the language of the Appropriation Act by which money was appropriated for the biennial

expense of the Warehouse Commissioner and of the Grain Inspection Department (Sec. 56, p. 18, Laws 1917) governs this matter and is in fact decisive of it. The language of this Appropriation Act is this:

"There is hereby appropriated out of the State Revenue Fund for expenses of the Warehouse Commissioner and Grain Inspection Department at Kansas City, St. Louis and St. Joseph, the sum of $19,500 for rent of offices, postage, telephone, traveling expenses, machinery and accessories, moisture testing, supplies, car seals, grain bags, and other necessary expenses of the department." [Sec. 56, p. 18, Laws 1917.]   Clearly, and for reasons which are obvious and which are firmly bottomed on the organic law (Cons. of Mo., sec. 48, art. 4; State ex rel. Kelly v. Hackmann, 275 Mo. 636) the mere language of an appropriation act is not ordinarily decisive and con clusive upon the courts as to the power of the Legis lature to appropriate the money of the State.   To so hold would be to put the Legislature above the Constitution whenever it deals in an appropriation act with the moneys of the State.   Moreover, the language of the section of the appropriation act above quoted does not purport to say where, or upon what business the travel impliedly permitted thereby must be done.   But on the contrary, the Act of 1917, which made the appropriation for traveling expenses, by a general pro viso expressly relegated the determination of the State's liability to pay such expenses to law *dehors* such act, by providing as follows: "*provided,* that none of the money herein appropriated shall be used for traveling expenses of State officials, or employees of the State, unless said money is specifically authorized by law to be so used." [Sec. 80a, p. 26, Laws 1917.] Therefore, both by an express statute and the decisions of this court, in order to ascertain where and upon what business travel may be done at the expense of the State we are at last relegated to the law creating the office of Warehouse Commissioner.

So, again we say, it is not to the appropriation act (save at times as a legislative construction, persuasive in determining the meaning of an otherwise obscure statute) that we must look, but to those statutes which created the office of Warehouse Commissioner and which define his duties, and the duties of the Grain Inspection Department of which he is the head. [Secs. 1-65, pp. 354-373, Laws 1913.]

Looking then to the above act to ascertain the duties incumbent on the Warehouse Commissioner and his official family, we note that it is only pursuant to Sections 33, 37, 41, 51 and 52 thereof that duties are prescribed which, either expressly or by implication, require the incurring of expenses for travel. Examining the above sections *seriatim* (but with an eye single to the facts before us in this case) it will be seen that Section 33, supra, Laws 1913, p. 365, permits, and whenever necessary requires, the examination of "all property in any public warehouse or elevator in this State." Travelling expenses may of course be incurred whenever in the opinion of the Warehouse Commissioner it is necessary to the performance of the above duty. Likewise, it is equally obvious that the State Scale Inspector may, pursuant to the above section, incur traveling expenses in the performance of the duties thereby enjoined.

Section 37 (Laws 1913, p. 366) makes it the duty of the Chief Grain Inspector to exercise a general supervision over the inspection of grain in this State. Obviously, therefore, this duty may entail the incurring of expenses for travel in the performance thereof by such inspector, or by an inspector *pro hac vice.* Germane to Section 37, supra, are, we think, the provisions of Section 41 (Laws 1913, p. 367), pursuant to which rules and regulations for the inspection of grain may be made by the Warehouse Commissioner.

Section 51 (Laws 1913, p. 369) of this act requires the Warehouse Commissioner to "examine into conditions and management and all matters concerning the

276 Mo.—39.

business of warehouses and elevators under this article.'' To this end the above section requires the Warehouse Commissioner, at least once every six months, to visit ''each warehouse or elevator in this State and personally inquire into the management'' thereof.

Section 52 (Laws 1913, p. 370) of the act seems to be germane to the provisions of Section 51, supra, and to constitute a recital of the details, or the means to the ends contemplated in said Section 51.

It will be observed that there is nowhere conferred upon the Warehouse Commissioner, or upon any employee of his department, by any of the above sections, or by any provision whatever of the act, so far as we have been able to find, any authority to incur expense for travel in the performance of any other duty than those which we have above set forth. Nor is there to be found any authority in the above section, or in the act elsewhere, to incur the expenses for which allowance is sought in the first, and second counts of the petition and alternative writ therein. For manifestly, the performance of none of the above recited duties requires any travel, except to places in this State whereat are located the branch inspection departments, or warehouses, or elevators, or the books, papers, etc., kept by the same and over all of which supervision or inspection, or both, are conferred by the act in question.

We do not mean to say that the expression ''travel within the State'' is to be regarded as a legal fetich, or that such a requirement is to be wholly decisive of the liability of the State to pay traveling expenses. It so occurs here that the statutory duties of the Warehouse Commissioner, as at present defined, are such as in the very nature thereof cannot entail travel outside of the State. If, however, the statutory duties of an officer of this State be such as require, or entail in their proper performance, travel beyond the borders of this State, then such travel is as much a necessary expense, for which the State would be liable, as is

travel within the State. [State ex rel. Lamkin v. Hackmann, 275 Mo. 47, 204 S. W. 513.]

If so it be that the crying exigencies brought about by a World War unforeseen and undreamed of when the act in question was passed had so altered national and domestic conditions when the trips in question were made as to make it absolutely necessary and praiseworthy for the relator to incur the expense in controversy in the first and second counts, we are yet forced, however much the situation may appeal to our personal sympathies to relegate this phase of the case to the Legislature. Our duty in the premises is done when we are unable to lay our finger on any existing statute which, when construed under the rules laid down, supra, will justify us in adjudging payment. We think the demurrer should be sustained and that our writ, so far as it went to counts one and two, should be quashed.

II. Coming to a consideration of the third count of the petition and alternative writ, we are likewise of the opinion that the demurrer thereto should be sustained. This upon the ground, not to mention any other, that beyond the vague and indefinite averment that the expenses for which the allowance is sought "*are listed as incidental and official expenses,*" there is no showing before us as to the nature of these expenses. There is an averment that there has been filed with the respondent "*a statement as to what such expenditures were for.*" But while relator has thus taken the State Auditor completely into his confidence, he has seen fit to forbear sharing this confidence with us. Before we can pass upon relator's right to have our peremptory mandamus we must of necessity be advised touching the precise nature of the expenses for which he prays us to command allowance. Otherwise the impossibility of our being able to ascertain whether the expenses are or are not such as the statutes permit to be incurred at the State's expense, is apparent. Moreover, absent any definite averments as to the precise

nature of these expenses, and present, as here, an aver-ment that relator has disclosed their exact nature to the respondent, the presumption of right performance of an official duty, which perforce the law, we entertain in favor of all officers, *naught else appearing,* would preclude us from granting relief. If, as seems to be very vaguely hinted, the words "incidental expenses" as here used import that class of expenditures which are in the vernacular denominated "tips," nothing is clearer that that the Legislature has up to the present writing wholly failed and neglected to take any affirma-tive action providing for the inclusion of such expendi-tures in expense accounts for which the State is liable.

But be this as may be, and whatever the nature of the expenses for which by the third count allowance is sought, both the respondent as State Auditor and this court in a proceeding to compel allowance thereof, are entitled to be advised touching the nature thereof; at least with such precision and definiteness as shall enable them to compare and check such expenses with the applicatory statutes and thereby ascertain whether the State is liable for the payment thereof. This has not been done in this case in this count.

It follows therefore, that our alternative writ herein was improvidently issued and that it ought to be quashed. Let this be done.

All concur.