## THE STATE ex rel. E. M. ZEVELY v. GEORGE E. HACKMANN, State Auditor, Appellant.

In Banc, July 28, 1923.

1. **OFFICER: Definition.** A public office is an agency of the State, and a person whose duty it is to perform such agency is a public officer. A public office is a charge or trust conferred by public authority for a public purpose, the duties of which involve in their performance the exercise of some portion of the sovereign power, whether great or small. A public officer is an individual who has been elected or appointed in the manner prescribed by law, who has a designation or title given him by law, and who exercises the functions pertaining to the office assigned to him by law.

2. ———: **Secretary of State Board of Equalization: Compensation for Services.** Under the statute (Sec. 12856, R. S. 1919) pertaining to the State Board of Equalization and declaring that "the officers and members of said board shall receive the same pay *per diem* as officers and members of the General Assembly," the secretary of said board, although not a member thereof, is an officer of said board, and as such is entitled to a compensation of five dollars per day for the time he serves said board as its secretary, although he is at the same time secretary of the State Tax Commission and receives as such a salary of $2400 per year and by statute (Sec. 12842, R. S. 1919) is made *ex officio* secretary of the Board of Equalization. (DAVID E. BLAIR, J., dissenting.)

3. ———: **Secretary of Tax Commission: Ex Officio Secretary of Board of Equalization: Compensation for Both Offices: Later Statute: Mandamus.** Sections 12854 and 12856 contemplate that a secretary of the State Board of Equalization will be elected by its members and will be paid five dollars per day for his services. By a later statute (Secs. 12841, 12842, R. S. 1919), creating a State Tax Commission and empowering it to elect a secretary and fixing his compensation at $2400 per year, it was provided that such secretary "shall also be the secretary of the State Board of Equalization, shall keep the records of said board and shall perform such duties as the board may require." The duties of the two positions are very similar. *Held*, that the only effect of said Section 12842 upon the earlier statutes pertaining to the State Board of Equalization was to take from that board power to name its secretary and to name a secretary for it, and did not change the fact that the person so named was an officer of such board, with certain duties to perform, and with a salary fixed by law for the performance of such duties, and the secretary of the State Tax Commission, although paid $2400 for his services to it, is entitled in addition to five dollars per day for his services as secretary of the State Board of Equalization. (Per GRAVES, J., concurring.)

*Held*, by DAVID E. BLAIR, J., dissenting, that there is no express provision in the statutes authorizing the secretary of the State Board of Equalization to receive a *per diem* compensation for his services, and Section 12856, allowing officers of the Board of Equalization a *per diem* and contemplating that the board should elect one of its own members, as its secretary, must be read in connection with Sections 12841 and 12842, which are later statutes and evidence a change in the legislative policy and make full and sole provision for a secretary for said board and for his compensation; and guided by the general rule that mandamus to compel the payment of public money to an officer is available only when his right thereto can be clearly inferred from statutory provisions, it should be held that relator, having been paid $2400 a year as compensation for his services as secretary of the Tax Commission, is not entitled to a writ of mandamus compelling the State Auditor to approve his additional claim of five dollars per day as compensation for his services as secretary of the Board of Equalization.

Appeal from Cole Circuit Court.—*Hon John G. Slate,*
Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for appellant.

(1) An officer trying to enforce a claim for fees must bring himself within the statute, otherwise the writ will be denied. State ex rel. v. Allen, 187 Mo. 564; State ex rel. v. Police Commrs., 80 Mo. App., 219. (2) Fees are purely creatures of statute and an officer claiming them must be able to put his finger upon the special provision of the statute allowing them or the courts will not award them. State ex rel. v. Allen, 187 Mo. 564. (3) Officers have no claim for official services rendered either against the government, a local corporation or an individual, where no provision has been made by law for compensation for such services. 29 Cyc. 1422-23; Williams v. Chariton County, 85 Mo. 646; Garnier v. St. Louis, 37 Mo. 554. (4) The rule is that all statutes in reference to costs must be construed strictly. An officer cannot legally claim remuneration unless the State has expressly conferred the right. Shed v. Ry. Co., 67 Mo. 690; Gordons v. Maupin, 10 Mo. 353; Crowfut v. Brandt, 58 N. Y. 108. (5) There is a fundamental rule that no officer of this State can pay out the money of the State except pursuant to statutory authority authorizing and warranting such payment. State ex rel. Bradshaw v. Hackmann, 208 S. W. 447; State ex rel. Bybee v. Hackmann, 207 S. W. 65; Lamar Township v. Lamar, 261 Mo. 171. (6) Relator in proceedings by mandamus must always show clear and specific right to the relief asked for. State ex rel. v. McIntosh, 205 Mo. 635; State ex rel. v. Bridge Co., 206 Mo. 134; Giestner v. Board of Health, 56 N. J. L. 596; Sutherland on Code Pl. & Pr., sec. 7080; State ex rel. v. Stone, 269 Mo. 342. (7) The officers and members of said board shall receive the same pay *per diem* as officers and members of the General Assembly.

The secretary of the State Tax Commission, who is also made secretary of the State Board of Equalization, is not an officer or member of the State Board of Equalization as said board is constituted and defined by the Constitution of Missouri. Sec. 12856, R. S. 1919; State ex rel. v. Walker, 97 Mo. 162; State ex rel. v. Seibert, 103 Mo. 401. (8) The terms "clerk" and "secretary," as applied to subordinate ministerial functionaries, are by popular usage synonymous terms, and are frequently used interchangeably. "Secretary" is defined as "a person employed to write orders, letters, dispatches, public and private papers, records and the like; an official scribe, amanuensis, or writer." "Clerk" is defined as one who is employed to keep records and accounts, a scribe, a penman, an accountant; as the "clerk of the court." State v. Currie, 3 N. D. 315; Griffin v. Town of Corydon, 44 S. W. 629; Black's Law Dictionary (2 Ed.) p. 1064. (9) Where the provision of law fixing compensation is not clear, it should be given the construction most favorable to the State. United States v. Claugh, 55 Fed. 375.

*Dumm & Cook* for respondent.

(1) The only question for determination in this cause is, Was respondent at the time he rendered the services for which he asks payment as secretary of the State Board of Equalization, an officer of said board in contemplation of Section 12856, Revised Statutes 1919? For a definition of an office and an officer, see United States v. Maurice, 2 Brock, 103 Fed. Cases, No. 15747; 2 Black's Comm., 36; Olmstead v. Mayor, 42 N. Y. Sup. Ct. 481; note (2 Ann. Cas. 390) to State v. Grant, 2 Ann. Cases, 382, citing: Seiler v. State, 160 Ind. 605; Love v. Baehr, 47 Cal. 364; State v. Liedtke, 9 Neb. 464; Scranton School Dist. v. Simpson, 133 Pa. St. 202; State v. Roddle, 12 S. D. 433. See also State v. Brennan, 49 Ohio St. 37; State ex rel. v. Bus, 135 Mo. 331; Mechem on Pub. Officers, p. 1, sec. 1; People v. Hayes, 7 How. Pr. 250; State ex rel. Smith v. Theus, 38 So. 872, 114 La.

1097; State ex rel. v. Maroney, 191 Mo. 545; State ex rel. Attorney-General v. Valle, 41 Mo. 22; Cannon-May Case, 106 Mo. 505; Ponath v. Hamilton, 240 S. W. 447.

WOODSON, C. J.—This is a proceeding brought in the Circuit Court of Cole County by the relator against the defendant, George E. Hackmann, State Auditor, having for its object a writ of mandamus, to compel the latter to audit and pay an account of $820 alleged to be due the former for services performed by him as secretary of the State Board of Equalization. The trial in the circuit court resulted in a judgment for the plaintiff, and in due time and proper form the defendant appealed the cause to this court.

The case was submitted upon the following agreed statement of facts:

"It is hereby stipulated and agreed in the above cause by and between Jesse W. Barrett, Attorney-General of Missouri, representing respondent, and E. M. Zevely, relator and petitioner, on his own behalf, as follows:

"That at all times mentioned in relator's petition, respondent, George E. Hackmann, was and now is State Auditor of the State of Missouri; that the State Board of Equalization was at all such times composed of the then incumbents of the state offices therein named and charged with the performance of the duties alleged in said petition.

"That on December 16, 1919, relator, E. M. Zevely, was duly appointed as secretary of the State Tax Commission of the State of Missouri under authority granted said commission by Section 12841, Revised Statutes 1919, and that the order of said appointment was in words and figures as follows, to-wit: [Then follows the appointment and qualifications of the plaintiff as such secretary.]

"That during all of the time of the rendition of the services and *per diem* charged for in the account of relator in the sum of $820 as presented to and allowed by

the State Board of Equalization on January 8, 1921, and described in relator's petition, which are hereby admitted to have been performed, said relator was secretary of the said State Tax Commission.

"That whatever relationship relator may have sustained to the late State Board of Equalization during the time of the performance of the service and *per diem* set forth in said account and petition, whether of an official or clerical character, was due to and existed wholly by virtue of the provisions of Article 4 of Chapter 119, Revised Statutes 1919, and particularly of Section 12842 thereof.

"It is further agreed that the account of relator in the sum therein and in relator's petition mentioned is unquestioned, that same was presented to, approved and duly allowed in said sum by said late State Board of Equalization on January 8, 1921, and was ordered by said board to be certified to the State Auditor for audit and payment; that same was so certified and presented and audit thereof was refused by said Auditor.

"That funds sufficient for the payment of said account have been conditionally appropriated therefor by the General Assembly and now remain in the treasury of said state, but it is further expressly agreed that the fact that such appropriation has been made shall not be taken into consideration by the court, nor in anywise influence its judgment in the decision, of this cause, but the court shall decide the question at issue according to and wholly upon such other and independent provisions and rules of law and construction as it may believe and find to be applicable and pertinent to a correct determination thereof.

"That the only question herein involved is one of law and resolves itself into this, to-wit: was petitioner, E. M. Zevely, at the time he rendered the services and *per diem* for which he asks payment as secretary of the State Board of Equalization, an officer of said board in con-templation of Section 12856, Revised Statutes 1919?

"And it is agreed that if the court decides said question in the affirmative, judgment shall be rendered for relator and mandamus shall issue commanding respondent as State Auditor to draw his warrant upon the State Treasury of this State in payment of relator's aforesaid account in said sum of $820; but if the court determines said question in the negative, judgment shall go against relator and his petition shall be dismissed."

Then follow the signatures of the parties to the suit.

I.  Counsel for the respective parties agree that the only proposition presented by this record for determination by the court is: Was respondent, Zevely, at the time he rendered the services for which he asks payment as secretary of the State Board of Equalization, an officer of said board in contemplation of Section 12856, Revised Statutes 1919? Upon this question respondent respectfully submits the citations following. The above section reads as follows:

"Sec. 12856.  The officers and members of said board shall receive the same pay *per diem* as officers and members of the General Assembly, but no mileage shall be allowed in any case in consequence of their duties as members of said board; and the said board shall meet every year at such time as may be designated."

From the very language of the statute quoted we must approach this question by first ascertaining what is an officer, and whether or not Zevely comes within that application.

Counsel for respondent have collected from all over the country a large number of definitions and adjudications defining "offices" and "officers," and in my opinion, I can do no better than to reproduce them in this connection.

Mr. Chief Justice MARSHALL's definition of "office" and "officer" contained in United States v. Maurice, 2 Brock, 103, Fed. Case No. 15747, is thus tersely put:

300 Mo.—5

"It [an office] is a public charge or employment, and he who performs the duties of an office is an officer." Or, as Blackstone states it: "An office is the right to exercise a private or public employment and to take the fees and emoluments thereunto belonging." [2 Bl. Com. 36.] And as extended in Olmstead v. Mayor, 42 N. Y. Sup. Ct. (10 J. & C.) 481: "It implies an authority to exercise some portion of the sovereign power of the State, either in making, administering, or executing the laws."

Where a person who is the incumbent of a public position is required by law to perform the duties of another position, not incompatible with the first, he, in the absence of any provision of the law to the contrary, is entitled to receive the compensation attached to each of the positions. [Note, 2 Ann. Cas. 390, to State ex rel. v. Grant, 2 Ann. Cases 382, citing following cases: Seiler v. State, 160 Ind. 605; Love v. Baehr, 47 Cal. 364; State v. Liedtke, 9 Neb. 464; Scranton School Dist. v. Simpson, 133 Pa. St. 202; State v. Roddle, 12 S. D. 433.]

An office is defined by the Century Dictionary as a post, the possession of which imposes certain duties on the possessor, and confers authority for their performance; and by Cochran as a position or appointment entailing certain rights and duties. [State ex rel. v. Brennan, 49 Ohio St. 33, 1. c. 37.]

A public office is defined to be the "right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." The individual who is invested with the authority and is required to perform the duties is a public officer. [State ex rel. v. Bus, 135 Mo. 325, 1. c. 331, citing Mechem's Public Officers, p. 1, sec. 1.]

The courts have undertaken to give definitions in many cases, and while these have been controlled more

or less by laws of the particular jurisdiction, and the powers conferred and the duties enjoined thereunder, still all agree substantially that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer.   [State ex rel. v. Bus, supra, 1. c. 332, and cases cited.]

An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested.   Every office is considered public, the duties of which concern the public. [People v. Hayes, 7 How. Prac. (N. Y.) 1. c. 250.]

In the most general and comprehensive sense a "public office is an agency for the State and a person whose duty it is to perform this agency is a "public officer." Stated more definitely a "public office" is a charge or trust conferred by public authority for a public purpose, the duties of which involve in their performance the exercise of some portion of sovereign power, whether great or small.   A public officer is an individual who has been elected or appointed in the manner prescribed by law, who has a designation or title given to him by law, and who exercises the functions concerning the office assigned to him by law.   [State ex rel. Smith v. Theus, 38 So. 870-72, 114 La. 1098;  cited in State ex rel. v. Maroney, 191 Mo. 1. c. 545.]

A "public office" is an agency for the State, and the person whose duty it is to perform this agency is a "public officer;"  the essence of it is the duty of performing an agency;  that is, of doing some act or acts, or a series of acts, for the State.   [Malone v. Williams, 103 S. W. 798.]

An "officer" is simply an agent of the public, whose power of attorney is the law, which prescribes his duties and limits his authority to such acts only as are necessary and incidental to a proper discharge of such duties as it imposes.   [Callaghan v. McGown, 90 S. W. (Tex.) 1. c. 327.]

In Michael v. State ex rel. Welch, 163 Ala. 425, 433, it is said:

"In Henly v. Lynne, 5 Bing. 91, Lord Chief Justice Best, defining who is a public officer, said: 'Every one who is appointed to discharge a public duty, and receives compensation, in whatever shape, from the crown or otherwise, is a public officer:' See also Bac. Abr. l. c. 'Offices and Officers.' As Mr. Chief Justice Marshall in United States v. Maurice, 2 Brock. 102, said: 'If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, it seems very difficult to distinguish such a charge or employment from an office, or the person who holds it from an officer.' An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public is interested." [Citing Shelby v. Alcorn, 36 Miss. 273; People v. Hayes, 7 How. Prac. (N. Y.) 248; State v. Valle, 41 Mo. 29; 2 Cow. (N. Y.) 13, 29, note B; People v. Bedell, 2 Hill (N. Y.) 196; People v. Lee, 28 Hun (N. Y.) 469, Carthew's Report, l. c. 479.]

Attention is respectfully called to the following additional Missouri cases in point on the question before the court: State ex rel. Atty. Gen. v. Valle, 41 Mo. l. c. 32; State ex rel. Cannon v. May, 106 Mo. l. c. 505; State ex rel. Ponath v. Hamilton, 240 S. W. 445, 447.

And to the citations under "Office," page 4923, and "Officer," page 4933, 6 Words and Phrases Judicially Defined.

The foregoing definitions and adjudications having imparted to us a fair knowledge as to what are "offices" and "officers," it becomes our duty to decide in their light, whether or not the position occupied by respondent was an office under the laws of this State; also, as to whether or not the duties the statutes imposed upon him constitute him an officer.

Sections 12841, 12842 and 12843, Revised Statutes 1919, create the office of secretary of the Tax Commission, defines his qualifications and prescribes the duties for him to perform.

The first section mentioned authorized the Tax Commission to appoint respondent secretary thereof, and fixed his salary at $2400 per annum. The same section also prescribed his qualifications, namely, a qualified accountant, and having experience in matters pertaining to the valuation, assessment and taxation of property. Said section also authorizes the Tax Commission in addition, to employ clerks, stenographers and agents from time to time as may be necessary, and to prescribe their duties and to fix their compensation, not to exceed what they were at the time receiving.

In passing it may not be inappropriate to state that, if I understand the position of the Attorney-General, he contends that the respondent was nothing more or less than a clerk of the Tax Commission, also of the Board of Equalization, and that the $2400 salary per annum compensates respondent for all the services performed for the Tax Commission and for the Board of Equalization. If that is true why did the Legislature designate him "secretary" of the Tax Commission, and fix his salary at $2400, and in the same section give the commission power to employ others as clerks, stenographers, and to fix their *compensation,* etc.? Besides I have never heard of a clerk being employed who had to be an experienced accountant, and experienced in the valuation, assessment and taxation of property.

The second section of the statute referred to requires the secretary of the Tax Commission to take and subscribe to an oath, just as all other officers are required to do, but the clerks, stenographers and agents the commission is authorized to appoint are not required to take or subscribe to any oath at all.

I will now proceed to state in order the duties the secretary, Mr. Zevely, was required by said statute to perform for the Board of Equalization, which were outside and beyond those required of him to be performed for the Tax Commission, viz:

(a)   To keep the record of the board.

(b)  Discharge such duties as the board may require—Ibid.

(c)  Administer oaths when required by the board —Sec. 12853.

(d)  To keep an accurate account of all the board's proceedings and orders, and file same, together with all their papers in the office of the State Auditor—Sec. 12853.

(e)  To officially sign the record of the proceedings and decisions of the board as its secretary, and file said record in the office of the State Auditor on its adjournment—Sec. 13025.

The agreed statement of facts shows that respondent performed all of these duties while he was secretary of the Tax Commission and *ex officio* secretary of the Board of Equalization.

The mere fact that the statute required the secretary to sign the records of the Board of Equalization is practically a legislative interpretation that he was an officer of that board. [State ex rel. Mosconi v. Maroney, 191 Mo. 531; People v. Hayes, 7 How. Pr. (N. Y.) l. c. 249; State ex rel. v. Harter, 188 Mo. 528.]

In view of the facts and authorities cited in this case I am unable to conceive how any rational mind can reach any other conclusion, except that the respondent was an officer of the Board of Equalization within the meaning of Section 12856, Revised Statutes 1919.

Nor does the fact that respondent was paid $2400 annually for his services as secretary of the Tax Commission bar his right to recover compensation for services performed as secretary *ex officio* of the Board of Equalization. If that were true, then none of the other members of that board could recover anything for their services performed while acting on that board, for the reason that they are state officers, and draw their compensation for services performed as members of the Board of Equalization. [State ex rel. McGrath v. Walker, 97 Mo. l. c. 163.] Finding no error in the record, the judg-

ment of the trial court is affirmed. *Walker* and *James T. Blair, JJ.,* concur; *Ragland, J.,* concurs in result; *Graves, J.,* concurs in separate opinion; *White, J.,* absent.

GRAVES, J. (concurring).—I concur in the result, and in much said in the opinion of the Chief Justice. I have, however, my own views upon the question, which I do not find specifically mentioned in the opinion of the learned Chief Justice.

The State Board of Equalization is a constitutional body. [Sec. 18, Art. X, Constitution 1875.] Its powers are fixed in certain respects, and those powers so fixed cannot be whittled away by legislative action. After specifying certain duties to be performed by such board, the Constitution adds; "and it shall perform such other duties as are or may be prescribed by law." Article V of Chapter 119, Revised Statutes 1919, are the statutory provisions concerning said board. Both by Sections 12854 and 12856, a secretary to this board is contemplated. Not only so, but the office of secretary of the State Board of Equalization is contemplated, and the duties to be performed are named. This law contemplates the appointment of the secretary by the board such secretary was to serve. In other words it contemplates that the State Board of Equalization shall appoint its secretary, who thereby becomes an officer of such board. As an officer of such board he was entitled to the same pay as a member of the board, i. e. five dollars per day. [R. S. 1919, sec. 12856.]

When the State Tax Commission was created by law (Art. 10, Chap. 119, R. S. 1919), it was empowered to appoint a secretary. [Sec. 12841, R. S. 1919.] The law fixed the salary of this secretary at $2,400 per year. By Section 12842, Revised Statutes 1919, the duties of the secretary of the Tax Commission are prescribed. An oath of office is prescribed. Then we have the closing sentence, thus: "He shall also be the secretary of the

State Board of Equalization, shall keep the records of said board and shall discharge such duties as the board may require.'' This is the sentence which raises the question in the instant case. The qualifications and salary of the secretary of the State Tax Commission is fixed by Section 12841. The $2400 per year is for his services as secretary of that board. The same officer is by the next section, and by the sentence quoted supra, made the secretary of the State Board of Equalization, His salary in that capacity is not mentioned, but the statute recognizes such an office under the State Board of Equalization, and fills that office. The salary for such officer is a *per diem* of five dollars. [R. S. 1919, sec. 12856.] The duties in each place are very similar in some respects. Thus in each case the records of the board are to be kept. In my judgment the only effect that Section 12842, Revised Statutes 1919, had upon the statutes pertaining to the State Board of Equalization, was to take from that board the power and right to name its secretary, and by the statute its secretary was named for it. This, however, does not change the fact that the party so named is an officer of the State Board of Equalization with certain duties to perform, and with a salary fixed by law for the performance of such duties. Had the Legislature desired to make the $2400 cover both places, it could have so declared in explicit language. It did not so declare, and the reading of all the statutes pertaining to both boards does not convince me that there was ever any legislative intent to deprive the officer of the salary prescribed for the place of secretary of the State Board of Equalization. For these reasons, I concur as first stated above. *James T. Blair, J.,* concurs in these views.

DAVID E. BLAIR, J. (dissenting).—The appeal in this case was lodged originally in Division Two, where it fell to me. My opinion reversing the judgment of the trial court was concurred in by HIGBEE, P. J. A dissent

by WALKER, J., brought the case to Court in Banc upon motion of respondent.

In view of the announcement in the majority opinion that the writer is "unable to conceive how any rational mind can reach any other conclusion, except that the respondent was an officer of the Board of Equalization within the meaning of Section 12856, Revised Statutes 1919," it clearly requires considerable temerity to disagree with my learned brother.

When the case fell to me in Division Two, I went into it carefully and reached a conclusion which nothing said in the majority opinion has changed and, at the risk of being classed as the possessor of an irrational mind, I file as my dissent here that portion of my divisional opinion following the agreed statement of facts, which is set out in full in the majority opinion.

The sole question for our determination is whether respondent is entitled to *per diem* as an officer of the State Board of Equalization within the contemplation of Section 12856, Revised Statutes 1919. He clearly was not a member of said board, for its members are the Governor, State Auditor, State Treasurer, Secretary of State and Attorney-General only. [Constitution, art. X, sec. 18.] By virtue of his appointment as secretary of the Tax Commission respondent became *ex officio* secretary of the State Board of Equalization and by that authority performed services for the Board of Equalization. [Sec. 12842, R. S. 1919.] His salary as secretary of the Tax Commission was fixed at $2400 per annum. [Sec. 12841, R. S. 1919.] Officers and members of the Board of Equalization are entitled to receive the same pay *per diem* as officers and members of the General Assembly (Sec. 12856, R. S. 1919), to-wit, the sum of five dollars per day. [Constitution, art. IV, sec. 16.] It is admitted that the amount of respondent's claim is correct, if he is entitled to compensation for his services as secretary of the State Board of Equalization *in addition to his salary as secretary* of the Tax Commission.

It is agreed that there are funds in the treasury, appropriated for the purpose and unexpended, sufficient to pay the claim.

(Since the divisional opinion was written the appropriation referred to has lapsed. The Fifty-second General Assembly, by Section 76 of House Bill 670, appropriated $820 for the relief of respondent, but this met with the executive veto. [Laws 1923, p. 398.] Therefore, the stipulation that there are funds in the treasury appropriated for the purpose and unexpended is no longer true in fact, although such stipulated fact must be taken *as true* for the purposes of this case.)

The rule is well settled that the State Auditor can approve the payment of money of the State only when satisfactory authority providing for such payment is shown. [State ex rel. Bradshaw v. Hackmann, 276 Mo. 600, 208 S. W. 445; State ex rel. Bybee v. Hackmann, 276 Mo. 110, 207 S. W. 64.] Clear and specific right to the relief sought by mandamus must be established before such relief may be granted. [State ex rel. v. McIntosh, 205 Mo. 616, l. c. 635; State ex rel. Doud v. Lesueur, 136 Mo. 452.] An officer claiming fees or persons claiming allowances against the State must be able to point to the statutory provision authorizing the same or authorizing the service, from which the right to make the charge may be clearly inferred. [State ex rel. v. Allen, 187 Mo. 560; State ex rel. Bybee v. Hackmann, supra.] We must approach the solution of the question before us guided by these general principles.

It must be admitted that there is no express provision authorizing the secretary of the State Board of Equalization, as such secretary, to receive a *per diem* allowance for his services. If such secretary is so entitled, it is because he is an officer of such board and *as such* authorized under Section 12856 to be so paid, and not then, if Section 12841 provides compensation in full for all services rendered by such secretary. The duties of keeping the records of the Tax Commission and com-

plying with its orders and keeping the records of the Board of Equalization and discharging the duties that board may require are specifically set out in Section 12842. What other duties could he possibly have? It is for the performance of such duties that the secretary of the Tax Commission is paid $2400 per annum.

One of the very important duties of the Tax Commission is rendering assistance to the State Board of Equalization in the performance of its duties. [See particularly Sec. 12847, R. S. 1919.] Its employees are necessarily chosen with the end in view of thus assisting the board. Section 12856 and Sections 12841 and 12842 must be read together. When thus read and construed together, it is apparent that the duties performed by respondent as secretary of the State Board of Equalization are merely a part of his duties prescribed by law as secretary of the Tax Commission.

Even if it was within the contemplation of the Legislature in enacting Section 12856 that the board might employ a secretary of its own choosing outside its own membership and, in that event, such secretary would become an officer of the board in the ordinary sense and entitled on that account to the same *per diem* as a member, yet Sections 12841 and 12842, being a later expression of the legislative will and making full and sole provision for a secretary for the Board of Equalization and for his compensation, evidence a change in the legislative policy and they are controlling. If Section 12856 was previously susceptible of such construction, that construction must fall by reason of the later enactments on the subject. In view of the enactment of Sections 12841 and 12842, it is unimportant that, under preexisting constitutional and statutory provisions, the secretary of the State Senate was allowed *per diem* as secretary of the State Board of Equalization.

It makes no difference whether or not respondent be deemed an *officer* of the State Board of Equalization in the ordinary acceptance of the word; he was not, with-

in the contemplation of Section 12856, construed in connection with, (and as modified by, Sections 12841 and 12842, such an officer as to entitle him to the *per diem* allowance in addition to his salary as secretary of the Tax Commission. The utmost which can be said, for the construction of said sections contended for by respondent is that there is grave doubt of the correctness of such construction and that clear right to the relief sought has not been shown. Under the rule laid down in State ex rel. McIntosh and State ex rel. Doud v. Lesueur (above cited) and other cases, respondent is not entitled to mandamus against the State Auditor to compel the allowance of his claim.

It therefore follows that the trial court erred in issuing its peremptory writ and its judgment should be reversed, and from the conclusion to the contrary announced in the majority opinion, I respectfully dissent.