## STANDARD STEEL WORKS COMPANY et al. v.
## WILLIAMS, receiver, et al.

1. The provision in the act approved February 28, 1876 (Acts 1876, p. 122), relating to the duties and liability of receivers appointed for railroad companies, " that in all cases where the business of any corporation operating a railroad, either wholly or partially in this State, shall, by an order or decree of any court, be placed in the hands of a receiver," etc., covers the case of a receivership created by order or decree of a court for the railroad, or for the railroad and its business; and in a proper construction of the statute so far as it fixes the liability of the receiver and defines his duties, no distinction can be drawn between the business of a corporation operating a railroad and the railroad company and its business.

2. The language of the statute under consideration, embodied in the Civil Code 1910), § 2797, is applicable to the case of the appointment of a receiver for a railroad company under mortgage-foreclosure proceedings.

3. The interest on the underlying bonds and the receivers' certificates partook of the nature of the debts out of which they issued, and does not fall under the head of incidental expenses for the payment of which provision is made in the statute controlling this case.

　　　　　No. 3185.　FEBRUARY 27, 1923.

Receivership; interventions. Before Judge Hammond. Richmond superior court. March 20, 1922.

The Georgia & Florida Railway, a railroad corporation operating a railroad in the State of Georgia, was placed in the hands of receivers by order of the superior court of Richmond County, on March 27, 1915, upon the petition of the trustees under a mortgage made by the railway in 1907. The receivers so appointed were directed, by order of the court, to continue to operate the railroad, and to contract for and purchase all materials and supplies necessary for that purpose. The plaintiffs in error, eleven in all, furnished to the receivers, in the year 1920, car-wheels, locomotive parts, coal, and other materials and supplies, necessary for conducting the business by the receivers and to keep the property in repair, to the value in the aggregate of something over $70,000. The receivers do not deny the indebtedness, but have failed and neglected to pay it. Separate interventions were filed in the receivership case by these creditors of the receivers, each seeking to establish a lien upon the gross income of the railroad in the hands of the receivers, superior to all other liens, under the laws of this State; and seeking to require the defendant in error, as the successor of the original receivers, to

12

pay such liens, according to their date, out of any funds in his hands as such receiver; all in accordance with the provisions of § 2797 of the Code of Georgia of 1910. The plaintiffs in error also claimed in their interventions the right to payment of the indebtedness due them out of the gross income of the railroad coming into the hands of the receiver, in preference to the payment out of such income by the receiver of interest upon receivers' certificates and coupons and interest upon outstanding corporate bonds of the Millen & Southwestern Railroad, of the Georgia & Florida Terminal Company, and of the Augusta Southern Railroad, which are comprised within the railroad system of the Georgia & Florida Railway in the possession of the receiver. An order was entered consolidating all of these interventions for the sole purpose of hearing the questions; and the receiver was ordered to show cause why the amounts claimed by the intervenors should not be paid out of the gross income in his hands, and why he should not be restrained from disbursing any of the said income of the receivership for any expenses or indebtedness, except such as is described in § 2797 (supra), until the payment of the indebtedness due to the intervenors.

The answer of the receiver admits that the gross income of the railroad coming into his hands, exceeds the sum of $100,000 per month, but says that none of this is available to pay the intervenors. The former receivers and the present receiver have paid, out of the gross income coming into the hands of the receivers, interest upon corporate bonds and mortgages, called underlying bonds, on portions of the Georgia & Florida Railway, as follows: on $212,000 of bonds of the Millen & Southwestern Railroad; on $400,000 of bonds of Augusta Southern Railroad; on $200,000 of bonds of the Georgia & Florida Terminal Company; on $1,600,000 of receivers' certificates. The receiver admits that it is his intention, unless restrained or prevented by the court, to continue to pay interest upon such receivers' certificates and upon said underlying bonds, and he denies that the intervenors are entitled to a lien and priority of payment in preference to interest on receivers' certificates or interest on bonds of the Millen & Southwestern Railroad, the Georgia & Florida Terminal Company, and the Augusta Southern Railroad. A very large proportion of the receivers' certificates have been

used to purchase additions to and permanent improvements of the property in the possession of the receiver. Some of these certificates, as appears by the receiver's answer, were used as follows: $191,000 were " for the purpose of repaying the . . principal amount of notes of said receivers, now outstanding, to pay for the equipment obligations now outstanding, whether created by the Georgia & Florida Railway or by the receivers." $250,000 " were used to acquire the Augusta-Southern Railroad." $34,667.99 " to issue to the bondholders committee of the first mortgage 5% fifty-year gold bonds of the Georgia & Florida Railway." $16,103.24 " to pay the balance on car trust obligations for the purchase money of equipment." $28,087.05 " to pay the balance of the purchase-money of certain lands." $7,500 " to purchase . . the capital stock of the Georgia & Florida Terminal Company." $400,000 " for revision work to be done on the road from Augusta to a point shortly beyond Keysville. . . It was estimated, at the time that the loan from the Government was made, that it would cost approximately $400,000 to accomplish such revision work."

The answer of the receiver alleges that a portion of the Millen & Southwestern Railroad, a distance of about nine miles, forms a part of the main line of the Georgia & Florida Railway; and sets up that payment by the receivers of interest upon the corporate bonds of that railroad is necessary, in order to preserve the integrity of the Georgia & Florida Railway, and in order to obtain the benefit of the operation of that portion of the railway from Millen to Vidalia, and in order to preserve for its creditors the property value of the said Millen & Southwestern Railroad over and above the said bonds, and to prevent the expense of foreclosure. The reasons moving the receiver to pay interest upon the other corporate bonds, that is, upon the Georgia & Florida Terminal Company bonds and the Augusta Southern Railroad bonds, are not specifically set forth in the answer; but from other allegations it may be fairly inferred that the reasons were the same as those recited above for the payment of interest on the Millen & Southwestern Railroad bonds. All prior issues of receivers' certificates have been merged or consolidated in the issue of $1,600,000, recited in paragraph 9 of the answer. Apparently each prior issue of receivers' certificates was in turn

taken up by subsequent issues, and the only receivers' certificates now outstanding are the $1,600,000 issued under the order of court, dated January 25, 1921.

Upon the hearing, which was had solely upon the pleadings, an order was entered admitting the indebtedness to the plaintiffs in error, but refusing to restrain the receiver from payment of interest upon the corporate bonds and upon the receivers' certificates; and further adjudging that the interest on such underlying corporate bonds and upon the receivers' certificates was "incidental expenses necessary to the carrying on of said business," within the terms of § 2797 of the Code of Georgia of 1910. The plaintiffs in error filed their bill of exceptions, assigning error upon each of the rulings just stated.

*H. W. Johnson, Alston, Alston, Foster & Moise, S. H. Myers, W. M. Howard,* and *C. C. Moore,* for plaintiffs in error.

*Barrett & Hull* and *Cumming & Harper,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The act approved February 28, 1876, entitled an act to define the duties and fix the liability of receivers appointed for railroad companies in certain cases, etc. (Acts 1876, p. 122), reads as follows: "in all cases where the business of any corporation operating a railroad, either wholly or partially in this State, shall, by an order or decree of any court, be placed in the hands of a receiver for the benefit of the creditors or stockholders of said corporation, it shall be the duty of said receiver to apply the income of said railroad to the payment of the incidental expenses necessary to the carrying on said business, which shall include the wages of employees, wood, cross-ties, and other material furnished, and which may be necessary for conducting said business and keeping the property in repair, and the damages which may arise from the loss or injury to goods, wares, and merchandise received by said road for transporation, and for injuries to persons and property caused by the running of the cars on said road, and for which said road is now liable, as common carriers, by the laws of this State; and a lien is hereby created on the gross income of said road, while in the hands of such receiver, in favor of such creditors or claimants, superior to all other liens under the laws of this State." The plaintiffs in error insist that their claims fall within the express terms of this act; that the

act is directly applicable to a situation like that presented in this case. The defendants in error join issue with this contention, and say that the statute has no such application to the case under the facts, because here the entire property is in the hands of the receiver under the foreclosure of a mortgage; and that a proper construction of the act makes it applicable only where the "business" of a railroad corporation, and not the "property" or the "railroad" itself, is put in the hands of the receiver. Distinguished and able counsel argue very cogently that in the construction of the act in question the distinction should be drawn between the business of a railroad corporation and the "railroad" or the property thereof.

We are of the opinion that to make this distinction would require the court to give a forced and strained construction to the statute. Where the language of a statute consists of common, ordinary words, and there is nothing to show that any unusual meaning is to be attached to the terms employed, it would be going beyond the province of the court, and all recognized limitations upon it in the construction of statutes, to deny to the language employed in the act its ordinary, usual signification, and give it an unusual meaning and a forced or strained significance, even though such construction would avoid results which might be disastrous to valuable properties of the species here involved. If the language employed in the statute were susceptible of two constructions equally reasonable and equally within the rules laid down for the construction of statutes, especially those dealing with interpretation of words, then there would be great force in the contention that the court should adopt that language which would avoid harmful results to the inerests of litigants and disastrous results to the species of property involved in the litigation. But, where the language is plain, we must follow the terms employed by the draftsman of the act and as it appears in the form which met the legislative approval and sanction, the form into which it was finally adopted as a statute by the lawmaking body. And when we consider the character of the business carried on by a corporation "operating a railroad," we are forced to the conclusion that in all cases where the business of a railroad corporation is placed in the hands of a receiver, the railroad itself passes into the hands of the receiver, its prop-

erties and its business. Generally, when we refer to the business of a railroad corporation, we refer to its public service and the matter of transportation of freight and passengers, for which service it has the right to demand and receive tolls or charges. That is the business for which it is created, though there are certain incidental accessorial businesses that they may engage in. But it is essentially a carrier, and in carrying on the business the railroad with its equipment is absolutely necessary. In the brief of counsel for defendants in error it is shown that there may be distinction between the business and the railroad; but we are of the opinion that the distinction is of such a character that it was not present in the legislative mind when the act under consideration was passed; and we conclude that when the statute provided for a case of a receiver taking over the business of a railroad corporation, the same thing was meant as if it provided for the case of the railroad being placed in the hands of a receiver. The title of the act itself is not a part of the act, but it may be looked to for assistance in the construction of the language of the act; and the act itself is defined in the title as one " to define the duties and fix the liability of receivers appointed for railroad companies."

2. Counsel for the receiver also take the position that this statute, giving a lien to creditors of the receiver of certain classes on the gross income of the receivership, is only applicable when the business of the railroad is placed in the hands of the receiver for the benefit of creditors or stockholders; and they argue that this section is applicable only when the suit is in the nature of a creditors' bill, or a controversy among stockholders, and does not apply when the receivership arises on the foreclosure of a mortgage seeking to dispose of the property itself as in this case. We can not agree with this contention. The language of the statute is broad and plain, and refers to any case where a railroad is placed in the hands of a receiver " for the benefit of the creditors or stockholders of said corporation." That was done in this case, though it was under a mortgage foreclosure, and not in a suit in the nature of a creditors' bill, or one involving a controversy among stockholders.

3. The act, as we have seen, makes it the duty of the receiver " to apply the income of said railroad to the payment of the in-

cidental expenses necessary to the carrying on of said busines?, which shall include the wages of employees, wood, cross-ties, and other material furnished, and which may be necessary for conducting said business and keeping the property in repair, and the damages which may arise from loss or injury to goods, wares, and merchandise received by said road for transportation," etc.; " and a lien is hereby created on the gross income of said road, while in the hands of such receiver, in favor of such creditors or claimants, superior to all other liens under the laws of this State." The plaintiffs in error here were creditors and claimants falling within the class of those in favor of whom there was created a lien " superior to all other liens under the laws of this State." But the " interest on the underlying bonds and on the receivers' certificates " did not give to the claimants thereof a standing with the class of creditors to which we have just referred. The court below reached the conclusion that the " interest on the underlying bonds and on the receivers' certificates was included in the phrase " incidental expenses necessary to carrying on said business." We do not think the interest on the bonds in any sense an incidental expense; and considering the character of the debts for which the receivers' certificates were issued, permanent improvements and purchase of property, etc., with interest on those certificates, could not be included among incidental expenses. The debts represented by the bonds and receivers' certificates were not incidental expenses, and the interest thereon partook of the nature of the debt out of which it issued.

It follows from what we have said that the judgment of the court below refusing the injunction sought was error, and that the plaintiffs in error are entitled to have a sufficiency of the gross income applied to the payment of their debts before any part of the gross income can be applied to the payment of underlying bonds and the receivers' certificates.

*Judgment reversed. All the Justices concur.*