## STATE REVENUE COMMISSION *et al. v.* NATIONAL BISCUIT COMPANY; *et vice versa.*

No. 9982.   June 16, 1934.   Rehearing denied July 12, 1934.

*M. J. Yeomans, attorney-general, L. S. Camp, W. K. Meadow, F. A. Holden, B. D. Murphy,* and *J. T. Goree,* for plaintiffs.

*Jones, Johnston, Russell & Sparks, Colquitt, Parker, Troutman & Arkwright, Robert S. Sams,* and *Marion Smith,* for defendants. *Hull, Barrett & Willingham, Alston, Alston, Foster & Moise,* and *George C. Palmer,* for persons at interest, not parties.

BELL, J. ■ The first question propounded by the Court of Appeals is answered as follows: (1) In the administration of the income-tax act of August 22, 1929 (Ga. L. 1929, p. 92), the State Revenue Commission should construe the provisions of the act so as to allow deductions for payments of the State income-taxes as imposed by the act itself. (2) Such a construction would not be "unreasonable and erroneous as being impracticable or mathematically impossible to enforce or administer." The act contains, among others, the following provisions:

"An act to provide for levying and collecting a tax on net incomes in this State, to provide how returns shall be made, how the tax shall be paid, and to fix penalties for violation hereof; and for other purposes.

"Section 1. On the net income of every person, firm, or corporation residing or doing business in this State, except insurance companies which pay to the State a tax upon premium income, after making such deductions as are allowed by the laws of the United States in the system by them adopted for determining net incomes and such increases and deductions as are hereinafter provided for in determining a proper taxable income, there shall be levied and collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth; the same to be returned, calculated, ascertained, and paid according to the system and rules hereinafter set forth.

"Section 2. Whenever any such person, firm, or corporation residing or doing business in this State makes an income-tax return to the United States, or is legally bound so to do, such person being hereinafter briefly referred to, for convenience, as a taxpayer, it shall be his duty to make at the same time a like return to the State of Georgia and file the same with the State Tax Commissioner for the purpose of a State tax on income. Such duplicate return shall furnish the same information as is contained in his return to the United States, shall be made on a blank form to be furnished by the tax-commissioner, and shall ascertain the taxable net income in the same way as in the return to the United States;

but before ascertaining the net income taxable by the State, the following changes shall be made:

"1.   To the amount ascertained under the laws of the United States as the net income taxable by the United States, there shall be added in said return the gross amount of any salary received by the taxpayer during the tax year, or accrued to him during said period as a public official or employee of the State, or of any county, municipal corporation, or other political division thereof, and the net amount of any fees, perquisites, or other emolument from said sources or any of them, paid to him during the same period for official compensation, except in the cases of the Governor of the State and of the several Judges of the Supreme Court, the Court of Appeals, and the Superior Court, who shall not be required to include their salaries paid or accruing for any term existing at the time of the passage of this act.

"2.   From the amount so ascertained as the taxable net income shall be deducted any salary paid to the taxpayer by the United States or accrued to him from the same source as an official salary for any service rendered by him to the United States, and any and all interest paid to him on any bond or bonds or other obligation of the United States.

"If neither of the changes indicated by subparagraphs 1 and 2 above is made, the net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon to the State of Georgia shall be one third of that payable to the United States.   But in case the net taxable income be changed as the result of complying with subparagraphs 1 or 2 above, the tax payable to the State shall be increased or reduced so as to be one third of what would have been payable to the United States under their laws upon such increased or reduced taxable net income.

"Section 3.   Any person, firm, or corporation who makes no income-tax return to the United States because of having no sufficient income taxable by the United States to call for such return under the laws of the United States, but who would have such sufficient income if his salary, fees or perquisites from the State or subdivision thereof were taxable by the United States, shall be liable and is hereby required to make to the State of Georgia an original return on the same or similar form as would be used in

making a duplicate return as required in section 2 of this act, indicating in some appropriate way whether the same is an original return. In such case the tax liability to the State shall be one third of what it would be to the United States if said income were by them taxable.

"In any case where a non-resident corporation having an office and doing business in this State makes its income-tax return in some other State, such corporation shall make an original return to the Tax Commissioner of Georgia, confined to its business done in this State, upon like principles as are in this section above provided.

"Section 4. It shall be the right of any taxpayer making return of income for taxation by the State, to attach or add to such return any claim such taxpayer may choose to make as to any item or items included in his return to the United States which he conceives to be exempt from taxation by the State of Georgia. In such case it shall be the duty of the taxpayer so making return to make a clear and distinct statement of all relevant facts connected with such claim, and to make a clear statement of the reasons why he conceives such item to be not taxable by the State. And there shall be deducted any amount that may be derived from incomes of any such persons or companies as the State of Georgia is prohibited from taxing under the Constitution of the United States. . .

"Section 14. The tax-commissioner shall have power and authority to make all necessary regulations for carrying out the provisions of this act, provided the same are not in conflict with the provisions of this act and do not affect any substantive legal right of the taxpayer resulting therefrom." Other provisions of the act will be noticed as occasion may require in this opinion.

For the purposes of this case it may be stated in general terms that the Federal act, adopted as the pattern of the Georgia act, provided that, in computing net taxable income, taxes paid or accrued to a State during the taxable year should be deducted from the gross income, but that Federal taxes paid or accrued during the year could not be so deducted. U. S. C. A. title 26, § 955. With the exception of two possible changes expressly mentioned, the Georgia act specifically declares, in section 2, that "the net income taxable by the State of Georgia shall be the same as that taxable

by the United States, and the tax payable thereon to the State of Georgia shall be one third of that payable to the United States." These changes or exceptions are stated in paragraphs 1 and 2 of the same section, and are not material in this case. It is further declared, however, that if the net taxable income should be changed as a result of complying with either of these subparagraphs, then "the tax payable to the State shall be increased or reduced so as to be one third of what would have been payable to the United States under their laws upon such increased or reduced taxable net income." The question here is whether the taxpayer in making his return to the State of Georgia should be allowed to deduct State taxes and not Federal taxes, in accordance with the Federal rule, or whether the deductions should be reversed in his return to the State. According to the plain and unambiguous language of the Georgia statute, the *tax* deductions must be the same as under the Federal law. That is to say, the taxpayer may deduct taxes paid or accrued to the State of Georgia, but can not deduct Federal taxes. This conclusion is absolutely demanded, in view of the statement in definite mathematical terms that the tax payable to the State of Georgia shall be *one third* of that payable to the United States. We do not overlook the fact that the act provides for an income-tax "like" or "similar" to that of the United States, to this extent employing words of uncertain meaning. It is further provided that a "duplicate" return shall be made to the State, furnishing the same information as is contained in the return to the United States, and that the tax-commissioner shall ascertain the taxable net income in the same way, subject only to the two possible changes referred to in section 2. By these and other provisions, any vagueness or uncertainty that might otherwise inhere in the words "like" and "similar" is clearly explained and removed, so far as the question here to be decided is concerned.

It is true that the act discloses that some other exceptions besides those expressly mentioned in section 2 might be forced into the equation (compare §§ 3, 4, 6), with the result that the final liability might not in all cases be absolutely one third of the amount payable to the Federal government; but such other possible exceptions do not affect the intended *base* proportion of one third, and do not change the meaning as to deductions *for taxes*.

As to the tax items, the taxpayer is allowed only such deductions

as he may take under the Federal law; that is, he may deduct State tax, but not Federal. There is no principle of law, constitutional or otherwise, which required the State to allow deduction of Federal taxes; and so, upon the question here involved, there is no occasion for inclining to a different construction in order to give the act a constitutional effect. Gorham Mfg. Co. *v.* Travis, 274 Fed. 975 (5). The rule that statutes enacted for the collection of taxes should be construed most strongly against the government and in favor of the citizen (*Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (2), 149 S. E. 211) does not apply where the statute is so clear and direct as not to require interpretation.

As to possible variations from the Federal act besides those specifically mentioned in section 2, we may say, first, that as to persons doing business in several States, including the State of Georgia, and making a return to the Federal government, it would not have been sufficient to file a duplicate return with the tax-commissioner of this State; but in such case the commissioner could have required a statement of the business done in this State, with the applicable deductions, so as to give effect to the other mandatory provisions of the act. See, in this connection, sections 3 and 14.

Again, certain classes of income might be taxable only by the Federal government, such as dividends from shares of stock in a national bank (*State Revenue Commission* v. *Hawkins,* 48 *Ga. App.* 414 (172 S. E. 845)), and this would, of course, make it impossible for the State to demand exactly one third of the amount of the tax payable to the United States. Other similar obstacles might arise to prevent that result. Conditions of this character, however, would merely place a barrier, pro tanto, against the execution of the legislative intent, and would not obscure such intention as otherwise clearly expressed. Moreover, contingencies of this kind were expressly provided for in section 4.

To recapitulate: The act, in terms clear and unmistakable, provides as a basic standard that "the net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon shall be one third of that payable to the United States." § 2. This means that Federal taxes can not be deducted, but that State tax may be, the Federal rule as adopted by this State having in terms so provided. The Georgia act provides for qualifications, it is true; but these relate to the man-

ner of making returns and to items "exempt from taxation by the State of Georgia," with other possible variations, none of which affect the basic rule as expressed in section 2. The nature of the contemplated changes and exceptions can not be misunderstood when the act is carefully studied as a whole. It is respectfully submitted that not one line or word can be taken as changing the basic rule that Federal taxes can not be deducted, nor as affording the slightest reasonable ground for such a contention. Upon the question of whether Federal, as opposed to State taxes, may be deducted, the act as a whole is as plain as words can make it, and is not open to construction.

What is said above accords with decisions in South Carolina, Connecticut, and Massachusetts, where statutes like ours (but not identical) were respectively enacted. Lancaster Cotton Mills *v.* South Carolina Revenue Commission, 132 S. C. 466 (129 S. E. 429) ; Singer Mfg. Co. *v.* Gilpatric, 98 Conn. 192 (118 Atl. 919) ; American Printing Co. *v.* Commonwealth, 231 Mass. 237 (120 N. E. 686). On the question whether it would be "impracticable and mathematically impossible" to make deductions of the State income-tax, we can not perceive any such difficulty. The tax to be deducted is not that which is due or to become due on the return as made, but is the tax which was paid or which accrued during the taxable year covered by the return. In re Russell Milling Co., 1 B. T. A. 194; People ex rel. Seligman *v.* Gilchrist, 215 App. Div. 166 (213 N. Y. S. 181). This is the rule (not, perhaps, without exception) to be applied under the act of 1929, by which the tax is neither due nor payable during the taxable year. If an exception would arise under the Georgia law in case the books of a taxpayer are kept on an accrual basis, with a reserve for such taxes as might be finally due for a given year, as apparently permitted by the Federal law (Aluminum Co. *v.* Routzahn, 282 U. S. 92, 51 Sup. Ct. 11), even this would not make the law unreasonable and incapable of enforcement upon the ground that the deductions would be "impracticable and mathematically impossible" of application. Otherwise a taxpayer could defeat both the State and the Federal law by the mere adoption of an accrual system of bookkeeping. A taxpayer could not adopt a permitted system and thereafter claim that because he had done so the act was indefinite as to a particular matter or should be construed differently as to

items to be deducted. Nor would the clarity of the situation be improved by reversing the rule as to deductible tax items. Nothing to the contrary of this statement was held in either U. S. *v.* Anderson, 269 U. S. 422 (46 Sup. Ct. 131), or in Uncasville Mfg. Co. *v.* Commissioner, 55 Fed. (2d) 893. In any view, the calculation is not impossible, if difficult. We deem it unnecessary to demonstrate this statement by a calculation in this opinion. Finally, it may be said that difficulty, or even impossibility, if existing in this regard, would not upset the legislative scheme in its entirety; and therefore the intention of the legislature should be enforced so far as possible, with advantage to the taxpayer in case of doubt as to the proper legal *method* of calculation. Under this act there is no doubt as to the *class* of deductions to be allowed with respect to taxes, however these deductions may be calculated. The Federal taxes could not be deducted; the State tax could and should be.

■ The second question propounded by the Court of Appeals is answered in the affirmative. This must necessarily follow from what has been said in the preceding division. On the question whether the Federal or the State tax should be deducted, the statute is so plain and unambiguous as to leave no possible room for interpretation; and in such case an administrative officer can not change the law by any rule or regulation. Contemporaneous construction is an available aid and may be considered by the courts only where the language of the statute is ambiguous and susceptible of more than one reasonable interpretation. Houghton *v.* Payne, 194 U. S. 88 (24 Sup. Ct. 590); United States *v.* Missouri Pacific Railroad Co., 278 U. S. 269 (7) (49 Sup. Ct. 133). By section 14 of the act under consideration, the tax commissioner was given authority "to make all necessary regulations for carrying out the provisions of this act, provided the same are not in conflict with the provisions of this act and do not affect any substantive legal right of the taxpayer resulting therefrom." The commissioner was not authorized to make any rule or regulation contrary to the clear and positive meaning of the act, and could make no interpretation whereby the Federal instead of the State tax might be deducted. Upon this question the clear language of the act was the only rule to be followed. Deductions should be the same as under the Federal law. In these circumstances there

could be no estoppel in favor of the taxpayer.  *Walker* v. *Whitehead,* 43 *Ga.* 538.  *Georgia Railroad Co.* v. *Wright,* 124 *Ga.* 596 (10, 13) (53 S. E. 251).  If the taxpayer has made an unauthorized deduction of Federal taxes instead of deducting the State tax, and has thus reduced the amount of the tax legally payable to the State, he has merely received an advantage, and no element of estoppel exists.  *Peyton* v. *Stephens,* 130 *Ga.* 338 (50 S. E. 563, 124 Am. St. R. 170) ; *Bank of Lumpkin* v. *Bank of Stewart County,* 20 *Ga. App.* 1 (2) (92 S. E. 778).  In such case, no interpretation, rule, or conduct of the tax-commissioner in conflict with the plain mandate of the law could be invoked to prevent final collection of the amount due.  "Powers of all public officers are defined by law, and all persons must take notice thereof.  The public can not be estopped by the acts of any officer done in the exercise of a power not conferred."  Civil Code (1910), § 303.  Where a statute is susceptible of one and only one construction, this court can not adopt a different construction merely to relieve parties of some real or imagined hardship; but if the law is valid, we can only apply it in "the form into which it was finally adopted as a statute by the lawmaking body."  *Standard Steel Works Co.* v. *Williams,* 155 *Ga.* 177, 181 (116 S. E. 636).  The fact that various officers, whether judicial or administrative, may have construed the act differently does not show that the language is obscure and ambiguous.  Neither is this proved by the circumstance that the Justices of this court are now divided on the question.  If this were not true, it would follow as a matter of law that in every case where the clarity or obscurity of a statute is the decisive question and the court is divided thereon, those who deem it to be obscure would ipso facto control the opinion of all others, with the result that the court as a whole should then so decide, notwithstanding a majority may be convinced that the act is plain.  A court does not and should not decide cases in this manner.

Nothing said in this opinion is to be taken as any reflection upon the memory of the faithful and efficient tax-commissioner who made the unauthorized interpretation and ruling.  No man is free from error.

■  The third and fourth questions will be answered together.  The third question and the first clause of the fourth question are both answered in the affirmative.  The second or last clause of the

fourth question is answered in the negative. By section 15 of the act of 1929 it was provided that if a taxpayer has failed or neglected to make a return, and if, after notice by the tax-commissioner so to do, he shall "continue so to fail and refuse, the tax-commissioner shall give to such taxpayer notice that on a day to be named he will assess the tax from the best information obtainable and after giving the taxpayer opportunity to be heard." As seen above, section 14 conferred authority upon the tax-commissioner to make all necessary rules and regulations for carrying out the provisions of the act; that is, for enforcing it.

It would be unreasonable to say that the tax-commissioner could make an assessment in the event of the failure or refusal to make a return, but could not do so where the return as made was erroneous and did not reflect the full amount due and payable under the law. The lawmaking body evidently did not intend to leave the tax-commissioner powerless where a return was in fact made, but where it was incorrect and deficient under the law. Undoubtedly, it was the legislative intent that the taxes prescribed by the act should be paid, and it was expressly made the duty of the tax-commissioner to enforce the law. In several decisions this court has stated broadly that public officers have only such powers as are granted to them by law, and "take nothing by implication" (*Baggerly* v. *Bainbridge State Bank,* 160 *Ga.* 556, 561 (128 S. E. 766), and cit.) ; but a statement so sweeping could hardly be taken as excluding any possible exception or qualification. In Throop on Public Officers, § 542, it is stated: "The rule respecting such powers is, that, in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers." See also State v. Younkin, 119 Kan. 74 (196 Pac. 620) ; Reliance Mfg. Co. v. Board, 161 Ky. 135 (170 S. W. 941) ; State v. Hackmann, 276 Mo. 110 (207 S. W. 64) ; State v. Hildebrant, 93 Ohio St. 1 (112 N. E. 138) ; 46 C. J. 1032, and cit. This principle as to implied powers has been recognized by this court. In *Georgia Railroad Co.* v. *Hutchinson,* 125 *Ga.* 762 (3), 770 (54 S. E. 725), it was said: "Whenever the duty is imposed on a tax-collector to collect a tax, that officer, by necessary implication, has the power to issue his process to compel

the enforcement of the tax by levy on the property of the delinquent taxpayer." See also *Touchstone* v. *Gormley*, 178 *Ga.* 130 (172 S. E. 335). Under the income-tax act of 1929, the power of the tax-commissioner to make assessments was not confined to cases where no return whatever was made, but, by necessary implication, such power extended to deficiencies on returns actually made but not complying with the law. This ruling does not conflict with the decision in *Staten* v. *Savannah &c. Railroad Co.*, 111 *Ga.* 803 (36 S. E. 938). By section 63 of the income-tax act of 1931, the act of 1929 was kept in force for the purpose of assessment and collection of all taxes due thereunder. Section 79 of the reorganization act (Ga. L. 1931, p. 32) provided that the State Revenue Commission (as created by section 78) shall have "all the powers and perform the duties now vested in the State tax-commissioner." By section 80 of the same act it was declared that "in the case of any tax due the State or any tax assessed by the State Revenue Commission, whether specifically provided for in the act levying the tax or not, the commission is empowered to issue a writ of fieri facias" therefor. Under these statutes the revenue commission, by following the procedure therein prescribed, was empowered to make an assessment for a deficiency even though a return had been made, and was also authorized to issue execution for the amount of the tax due. Moreover, under the section last quoted, it might be questioned whether an assessment was really necessary, the language being that an execution could be issued "in the case of any tax due." But we do not here decide that question.

■ Questions 5 and 6 are each answered in the negative. Under section 35 of the income-tax act of March 31, 1931 (Ga. L. Ex. Sess. 1931, p. 50), the tax-commissioner could determine a deficiency in respect of a tax imposed by this act or "any prior act." By section 39 it was provided that if any tax imposed by this act "or any prior act" is not paid within a prescribed time, execution may be issued therefor, together with interest and penalties. But the act of 1931, effective January 1 of that year, repealed and superseded the act of 1929, with the result that where a taxpayer had adopted a fiscal year basis, both acts would be applicable in part to the fiscal year ending in 1931, although a single return would be made. See §§ 20, 32, 33. Upon a proper construction, the act of 1931, so far as it relates to penalties, does not apply to deficiencies

under the act of 1929, except for a fiscal year in which both acts were in part operative. Accordingly, the question whether a penalty could be imposed in this case must be determined solely by the act of 1929, the only pertinent provision of which is contained in section 15. Under that provision, a penalty could be demanded only where there was a failure to make a return, and could not be imposed where a bona fide return was in fact made, even though it may have proved to be an erroneous and deficient return. Penalties are not favored, and a statute imposing a penalty must be strictly construed—even more strictly than a statute conferring powers upon a public officer. Accordingly, under the facts stated in the fifth and sixth questions, the penalty could not be collected under either act.

The request for a reargument is denied. We have carefully considered the numerous and thorough briefs, as well as all cases cited therein, although many of such authorities are not discusesed or referred to in this opinion. We do not deem additional argument necessary.                    *All the Justices concur, except*

GILBERT, J., dissenting. ■ The State income-tax law of Georgia of 1929 (Ga. Laws 1929, p. 92), as shown by its caption, provided for "levying and collecting a tax on net income." In section 1 of the act it is provided: "On the net income of every person, firm, or corporation residing or doing business in this State, except insurance companies which pay to the State a tax upon premium income, after making such deductions as are allowed by the laws of the United States in the system by them adopted for determining net incomes and such increases and deductions as are hereinafter provided for in determining a proper taxable income, there shall be levied and collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth; the same to be returned, calculated, ascertained, and paid according to the system and rules hereinafter set forth." The next section in substance provides that where any person, firm, or corporation makes an income-tax return to the United States, it shall be his duty to make "a like return to the State of Georgia." "Such duplicate return shall furnish the *same information* as is contained in his return to the United States, shall be made on a blank form to be furnished by the tax-commissioner, and shall ascertain the taxable net in-

come in the same way as in the return to the United States; but before ascertaining the net income taxable by the State, the following changes shall be made." Then follow specified changes, such as additions and deductions. The act, in §§ 3, 4, and 6, expressly recognizes changes that may be made in the duplicate of the return to the United States. Therefore the changes named herein in subdivisions 1 and 2 of section 2 are not the only changes that could be made. For instance, there are items of taxable income under the Federal statutes that can not be legally taxed by the State of Georgia. It is only necessary to illustrate by reference one item. This State can not tax shares in national banks under existing State law. For a well-considered decision on this question see *State Revenue Com.* v. *Hawkins*, 48 *Ga. App.* 414 (172 S. E. 845).

Whatever, therefore, may be the net taxable income under the Georgia act of 1929, after making the deductions therein expressly allowed, there must be a further deduction from the net taxable return made to the Federal government of any income received by way of dividends on shares of stock in national banks. How many instances of this kind exist it is not necessary to ascertain. Certainly the General Assembly of Georgia knew that there would be other items included in the return made to the Federal government that must be deducted in ascertaining the net taxable income to be reported to the tax-commissioner of Georgia. As correctly stated by counsel for the State, there is a distinction between "net income" and "taxable net income," and, as stated by counsel, "'net income' is the income which remains after the expense of earning it has been paid; and that 'taxable net income' is the net income which remains after all deductions and exemptions allowed by the law have been taken from the net income." The taxpayer was bound to pay income taxes to two governments, State and Federal. The Federal income-tax law allows a deduction from gross income of all State taxes, but does not allow a deduction of income taxes paid the Federal government. In other words, the United States allows a deduction of taxes paid, not to itself, but to another government. A State income tax *similar* to that of the United States would be one which allows a deduction of taxes paid, not to the State, but to another government. In other words, a *similar* income tax levied by the State of Georgia would allow a deduction of Federal taxes paid on income derived from business done in Georgia, but

not taxes paid to the State of Georgia. This is the reasonable and practical construction of the phrase a tax "similar" to that of the United States. Whether the act, under either construction, is mathematically impossible to enforce or administer, I am unable and not required to answer.

The Georgia income-tax act of 1929 in one instance, referring to the character of tax, uses the word "similar." The tax is "similar" to that of the United States. In the other instance, referring to the tax returns it uses the word "like"—that is, the return is "like" that made to the United States. The two words, "similar" and "like" mean practically the same. The word "similar" is defined in 58 C. J. 733, § 1: "The word is derived from the Latin word 'similar,' meaning 'like.' The dictionary definitions of the word are said to be unsatisfactory, since the word has in use, and according to the lexicographers, two distinct meanings, both of which have been recognized by the courts. However, the term has been generally defined as like; having a resemblance; resembling; homogenous; uniform." So that in discussing the two words we may refer to them as substantially one word. Webster defines the word "like" as "having the same, or nearly the same, appearance, qualities, or characteristics; resembling; similar to." City of Lincoln Center v. Linker, 7 Kan. App. 282 (53 Pac. 787, 788). And to the same effect see Houghton v. Field, 56 Mass. (2 Cush.) 141, 145; Huff v. Commonwealth, 55 Va. (14 Grat.) 648, 650; United States v. Wallace, 116 U. S. 398 (6 Sup. Ct. 408, 29 L. ed. 675); Ivey v. State, 112 Ga. 175 (37 S. E. 398); Welborne v. State, 114 Ga. 793, 804 (40 S. E. 857).

The State of Massachusetts had a law providing for taxation of the property of a non-resident within the jurisdiction of Massachusetts at the time of his death, provided the property was subject to "a tax of like character," to wit, that imposed by the State or country of the taxpayer's residence. The question arose as to the proper construction of the phrase "like character." Chief Justice Rugg wrote the unanimous opinion of the Supreme Judicial Court of Massachusetts, holding that the word "like" does not necessarily mean the same in all particulars, and does not imply identity, but only similarity. In the opinion the distinguished Chief Justice, quoting and citing authorities from other courts, said: "Our statute should be interpreted in the light of the evil

at which it was aimed and the purpose intended to be accomplished. The words 'like exemption' in our statute are satisfied by the terms of the New York statute. Said Chief Justice Shaw in Houghton v. Field, 2 Cush. 141, 145: "Like" does not necessarily mean the same in all particulars, but rather the contrary.' 'Like' in this connection does not imply identity, but only similarity. It does not import coextensiveness in every detail, but only a resemblance in its salient features. See also Hopkins v. Benson, 21 Me. 399; United States v. Wallace, 116 U. S. 398, 400, 6 Sup. Ct. 408, 29 L. ed. 675. 'Exemption' as applied to taxation signifies an immunity or freedom from that pecuniary burden. The New York statute covers the same general subject of taxation on successions as does our act. It is of 'like character.' It defines the classes of property to which it applies. It omits the particular kind of property here involved. That is as much an exemption in a broad sense as would be a comprehensive general phrase with certain denominated exceptions. The resulting freedom from taxation would be accomplished in one way as well as in the other. Although the New York law and our own are not exactly commensurate and coterminous in every respect as to property of a non-resident not made subject to the succession tax, yet as New York would not impose a succession tax on property exactly like that here in question and in New York in the same sense as this is in Massachusetts, if it belonged to a deceased resident of Massachusetts, we are of the opinion that the descriptive words of our statute 'like exemption' are satisfied. To the same effect is the well-reasoned opinion in Kansas v. Davis, 88 Kan. 849, 129 Pac. 1197, Ann. Cas. 1914B, 688." Bliss v. Bliss, 221 Mass. 201 (109 N. E. 148, L. R. A. 1916A, 889). See also Bisetti v. Roberts, 25 N. M. 365 (183 Pac. 403); Munford v. Keet, 154 Mo. 46 (55 S. W. 273). Authorities cited herein from other jurisdictions of course are not controlling. Likewise some decisions cited contra are not controlling. Moreover, some of them are based upon statutes not identical with the Georgia statute, and are not followed because neither exactly in point nor satisfying in reason.

In the income-tax act of 1929 the words "duplicate return" are used, as well as the term "like return." They occur in section 2 as follows: "it shall be his [the taxpayer's] duty to make at the same time a *like return* to the State of Georgia, . . for the pur-

pose of a State tax on income. Such *duplicate return* shall furnish the *same information* as is contained-in the return to the United States, shall be made on a blank form to be furnished by the tax-commissioner, and shall ascertain the taxable net income in the same way as in the return to the United States; but before ascertaining the net income taxed by the State, the following changes shall be made." Then follow provisions which may result in the payment of an amount to the State different from that paid to the United States. Clearly this indicates that the words "duplicate return," used in immediate connection with the words "like return," can not have the effect of changing the meaning of the words "like return" and the words "similar tax." The reasonable interpretation of that provision is that the taxpayer must make a "duplicate return" to the tax-commissioner of Georgia, furnishing the same information that was furnished by his return to the United States. From that duplicate return the tax-commissioner of Georgia, thus knowing the facts, may make such deductions or changes as are proper under the Georgia income-tax act. The Georgia tax act of 1929 can not mean that under any and all conditions, or under any and all facts, the Georgia taxpayer's liability must be absolutely one third of what he paid the United States government. That construction would be wholly inconsistent with the terms of the act. A non-resident corporation doing a business in another State must pay a Federal tax on its entire net income, but it does not pay one third of that amount to the State of Georgia. The Georgia act expressly acknowledges that fact, and provides for a tax confined to "the business done in this State." § 3.

The question here does not involve any charge of bad faith, either in failing to make a return or in making an incorrect return. The taxpayer duly made full and accurate return, stating the amount of Federal income tax paid, which was duly allowed by the Georgia tax-commissioner. It is not intended by this to suggest that the action of the commissioner in allowing the deduction amounts to a judgment having the force and effect of res adjudicata. "Statutes levying taxes should be construed most strongly against the government and in favor of the citizen. Revenue statutes are in no just sense remedial laws, and are not, therefore, to be liberally construed." *Mayor &c. of Savannah*, v. *Hartridge*, 8 *Ga.* 23 (6, 7); *Standard Oil Co.* v. *Swanson*, 121 *Ga.* 412, 414

108

(49 S. E. 262) ; *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (supra) ; *McIntyre* v. *Harrison,* 172 *Ga.* 65, 75 (157 S. E. 499) ; *Norman* v. *Southwestern R. Co.,* 42 *Ga. App.* 812, 815 (157 S. E. 531). On the other hand, in all cases where the power of the State government to tax is brought in question, doubt should be resolved in favor of the government. Constitution of Georgia, Civil Code (1910), § 6462. "Subject to the rule that tax-exemption clauses are to be strictly construed, tax laws are to be liberally construed in favor of the taxpayer, and are not to be extended by implication." 1 Honnold's Supreme Court Law, 591, where will be found citation of numerous Supreme Court decisions. On page 593 it is stated: "It is an old familiar rule of the English courts, applicable to all forms of taxation, . . that the sovereign is bound to express *its* intention to tax in clear and unambiguous language." Citing authorities. See Cooley on Taxation, 146. Where the construction of a statute is doubtful, the general rule is that courts will attach great weight to the contemporaneous construction given to the act by the department of State empowered and designated to supervise its operation. *Blount* v. *Munroe,* 60 *Ga.* 61; *Howell* v. *State,* 71 *Ga.* 224, 229 (51 Am. R. 259) ; United States *v.* Alabama Great Southern R. Co., 142 U. S. 615 (12 Sup. Ct. 306, 35 L. ed. 1134). See also *Solomon* v. *Cartersville,* 41 *Ga.* 157; *Epping* v. *Columbus,* 117 *Ga.* 263 (43 S. E. 803) ; United States *v.* Johnston, 124 U. S. 236, 253 (8 Sup. Ct. 446, 31 L. ed. 389) ; Swendig *v.* Washington Power Co., 265 U. S. 322 (44 Sup. Ct. 496, 63 L. ed. 1036) ; Fawcus Machine Co. *v.* United States, 282 U. S. 375 (51 Sup. Ct. 144, 75 L. ed. 397) ; 25 R. C. L. 1043, 1045. "'The practical interpretation of an ambiguous or doubtful statute that has been acted upon by officers charged with its administration will not be disturbed except for weighty reasons. Logan *v.* Davis, 233 U. S. 613 [34 Sup. Ct. 685, 58 L. ed. 1121] ; Maryland Casualty Co. *v.* U. S., 251 U. S. 342 [40 Sup. Ct. 155] ; Swendig *v.* Washington Co., 265 U. S. 322 [supra].'" Brewster *v.* Gage, 280 U. S. 327 (50 Sup. Ct. 115).

The tax-commissioner and the Executive Department construed the act to mean the same as I now construe it; in other words, that the taxpayer was allowed, under the act, to deduct his Federal income-tax payments, but not his State tax. The tax-commissioner not only so construed it, but provided in printed regulations that

such was the law. On the blanks furnished to taxpayers for making their returns the same information was given, and space provided for the taxpayer to insert his deductions for Federal tax payments. That construction was never questioned, so far as I am aware and so far as the record and briefs in the present case indicate, until this case arose. I repeat that the above is a fair, reasonable, practical construction of the income-tax act of 1929.

What is said above is sufficient to lead us to the conclusion that the 1929 income-tax law of Georgia was intended to and did allow a deduction from the gross income of the taxpayer of whatever he paid during the year as an income tax to the United States, but not a deduction of the amount paid as a State income tax. Other reasons merely add weight to the foregoing. They are, however, important and may properly be stated. The Georgia income-tax act of 1929, as is well known, was passed during an emergency that needed immediate attention. The General Assembly, instead of working out and adopting an act complete within its own terms, merely adopted a tax "similar" to the Federal income-tax law. It was not intended as a permanent act, and in fact it was repealed at the extraordinary session of 1931. It is now no longer in force.

In all interpretations of statutes it is the duty of the courts to look diligently for the intention of the General Assembly. I think the interpretation here made is in accordance with the intention of the General Assembly. Able counsel for the State insist that the act is clear and unambiguous, and that the present State Revenue Commission is so clearly right in its interpretation that there is no room for construction. I call attention to the fact that the State tax-commissioner, who was then entrusted and empowered to enforce the act, took the contrary view. Thus the same tax department, within two years, the personnel having changed, construed the same provision of the act to have opposite meanings. It is worthy of note that the act of 1929 provided a "Board of Income Tax Review." It does not appear that the tax-commissioner deemed it worth while to submit the question to review. The case was before the Court of Appeals on writ of error from the superior court. It appears that both the superior court and the Court of Appeals rendered judgments adverse to the view of the State Revenue Commission; and that the commission filed a motion for rehearing, which was granted. This court rendered a decision which

was likewise adverse to the commission, and on motion of the State granted a rehearing. The fact that this court construed the act in accordance with the construction of the tax-commissioner who accepted the return, and afterward, on motion, granted a rehearing, certainly evidences doubt on the minds of some of the Justices. When the original decision was rendered by this court five Justices concurred in the conclusion that the Georgia income-tax act of 1929 on the point involved was ambiguous and should be construed against the contention of the present State Revenue Commission. One Justice dissented, stating: "The act of 1929 is indefinite, and would be void except for its reference to the Federal act." The income-tax laws, from their inception, have been complicated and involved in ambiguities and doubts and differences of opinion. From 1913 until the present time few taxpayers have been able to make out their own returns. It has been necessary to resort to some one having experience, or experts. The tax is one of mystery, confusion, and error. The government employs an army of agents to search out errors, and in turn their errors are constantly being made manifest. Even then the experts, the Treasury Department, and the Income-tax Department of the United States have made so many errors in favor of the government that a yearly refund to the taxpayers for overpayments has averaged nearly one hundred million dollars.

In Helvering v. New York Trust Co., decided by the Supreme Court of the United States, May 28, 1934, that court said: "The rule that where the statute contains no ambiguity it must be taken literally and given effect according to its language is a sound one, not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. Commr. of Immigration v. Gottlieb, 265 U. S. 310, 313 [44 Sup. Ct. 528]; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 37 [15 Sup. Ct. 508, 39 L. ed. 601]. But the expounding of a statutory provision strictly according to the letter, without regard to other parts of the act and legislative history, would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in Brown v. Duchesne, 19 How. 183 [15 L. ed. 595], this court said (p. 194): 'It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or

statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the legislature, as thus ascertained, according to its true intent and meaning.' Quite recently in Ozawa *v.* United States, 260 U. S. 178 [43 Sup. Ct. 65], we said (p. 194) : 'It is the duty of this court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance; but if this leads to an unreasonable result, plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment, and inquire into its antecedent history, and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.' And in Barrett *v.* Van Pelt, 268 U. S. 85, 90 [45 Sup. Ct. 437], we applied the rule laid down in The People *v.* Utica Ins. Co., 15 Johns. 358, 381 [8 Am. D. 243], that 'a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.'" Again, the court said: "Generally, questions as to the meaning intended do not arise until the language used is compared with the facts or transactions in respect of which the intent and purpose are to be ascertained."

There is always a great volume of litigation in the Federal courts concerning the proper construction of the income-tax law. How, then, can it be said that the act is plain and unambiguous and means exactly contrary to what every tribunal has held it to mean from the first until the present consideration on rehearing? But it is insisted that the act provides, in section 2, subparagraph 2, viz.: "If neither of the changes indicated by subparagraphs 1 and 2 is made, the net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon to the State of Georgia shall be one third of that payable to the United States. But in case the net taxable income be changed as the result of complying with subparagraphs 1 and 2 above, the tax payable to the State shall be increased or reduced so as to be one third of what would have been payable to the United States under their laws upon such increased or reduced taxable net in-

come." This, however, is not the entire act. Other portions can not be ignored. The first section declares that the tax shall be "similar" to the Federal tax; also the third, fourth, and sixth sections acknowledge changes. The law with regard to taxing Federal instrumentalities forces other changes. The section just quoted must be construed in harmony with all of the law. Thus construed, it can not be held that the changes mentioned in section 2, par. 2, are exhaustive, and that otherwise the act of 1929 is identical with the Federal tax law. The contention that under the Georgia act of 1929, as construed by the present State Revenue Commission, that is, that the law allows a deduction of the amount paid on Georgia income tax, and, with that change and the possible changes in section 2, subparagraphs 1 and 2, the Georgia tax would be one third of what would have been payable to the United States, overlooks one important fact. The Federal government deducts from the income of the taxpayer all taxes paid other than those paid to the United States. In other words, it deducts for State, county, municipal, school, and other taxes, not only in the State of the residence of the defendant, but such taxes paid in any and all of the States. Thus it will be seen that under such a construction the State may be bound morally, if not legally, to return an overpayment of taxes to many citizens. The State could not in good conscience call upon all taxpayers who made returns under the act of 1929 for a revision, unless the State is willing to refund overpayments as well as to collect underpayments.

Under the act of 1929 the first income taxes payable to the State were returned in 1930. Of course, as to this payment, there could not have been any Georgia income-tax payment for the year previous; therefore there was no such tax payment to be deducted in 1930, but there were doubtless, in many instances, other State taxes payable. The State having successfully maintained its contention, as ruled by the majority, it should stand willing to revise the returns and allow all taxes, except Federal taxes, to be deducted before arriving at the amount due to the State. The construction of the Revenue Commission is contrary to that of all of the above who have officially construed the act. In the brief filed in the Court of Appeals by the State Revenue Commission after the grant of a rehearing, it is suggested: "If the court is doubtful about the proper construction of the act of 1929, or is doubtful about the

force and effect of the Norman regulation, the questions involved might be certified to the Supreme Court." Moreover, in the brief of the State Law Department, filed on the motion for rehearing granted by this court, appears the following: "Whatever may have been previously said upon this point, we wish to now definitely and finally take the position that State income taxes are deductible under the State income-tax act of 1929." It is a reasonable inference from this statement that the State Law Department itself has at some time or times been doubtful as to the proper construction of the Georgia act of 1929 with reference to deduction of payments for State income taxes. Counsel now states that the act is so plain and so free from ambiguity that there is no room for construction.

Counsel for the State Revenue Commission argue at great length and cite authorities to support the contention that "where an act is plain, unambiguous, and positive, and is not capable of two constructions, the court is not authorized to construe the act according to the supposed intention of the legislature." That proposition is in no way denied. The question is not herein involved. From first to last the view has been taken, by every tribunal to which the issue has been submitted, that the language of the act is not plain, not unambiguous; but that if it is, the plain meaning is the opposite of that now for the first time contended for by the State Revenue commission. In the brief of the commission on rehearing the language used in the original opinion is criticized as follows: "Movant respectfully says that this court is not concerned with the reasonableness or unreasonableness or with the practicability or impracticability of the statute, when the words . . when . . the law is plain, clear, and unambiguous," etc. In this also there is an entire failure to perceive the point at issue. Counsel assume that the statute is "plain, clear, and unambiguous," and treat that issue as settled. Nevertheless the commission's motion for a rehearing devotes more than a page of argument for the purpose of showing that the act "offers no insuperable obstacle to the calculation of the tax;" that the operation is "entirely practical . . easy of computation; . . also entirely practical and capable of calculation to a mathematical certainty." The original opinion made no reference to the mathematical feature of the question, and referred to the construction as reasonable and practical only as

throwing light on the meaning of a statute which has met with controversy throughout a very lengthy litigation. The above-stated facts seem amply sufficient to show that there is room for doubt as to the proper meaning of the act.

The above discussion applies to both the first and second questions.